United States Court of Appeals,

Eleventh Circuit.

No. 95-5398.

Nadine BROOKS, Mildred McIver, Duane Norman, Leonard Struthers, Madie Wilkerson, J.D. Wilkerson, Winter Garden Citrus Growers Association, Winter Haven Citrus Growers Association, Plaintiffs-Appellants,

v.

BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC., New York Life Insurance Company, United American Insurance Company, First National Life Insurance Company, Defendants-Appellees.

March 11, 1997.

Appeal from the United States District Court for the Southern District of Florida. (No. 95-405-CIV-SM), Stanley Marcus, Judge.

Before CARNES, Circuit Judge, and FAY and CAMPBELL[*], Senior Circuit Judges.

PER CURIAM:

The district court's grant of summary judgment to the Defendants is AFFIRMED based upon the holding and rationale contained in Part III.A of the district court's September 22, 1995 order, a copy of which is attached as Appendix A hereto. We have no occasion to reach the remaining issues addressed in other parts of that order and imply no view concerning any of them.

AFFIRMED.

ATTACHMENT

APPENDIX A

UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF FLORIDA.

No. 95-405-CIV-MARCUS.

Nadine Brooks, Mildred McIver, Duane Norman, Leonard Struthers, Madie Wilkerson, J.D. Wilkerson, Winter Garden Citrus Growers Association and Winterhaven Citrus Growers Association, Plaintiffs,

v.

---

[*]Honorable Levin H. Campbell, Senior U.S. Circuit Judge for the First Circuit, sitting by designation.

Blue Cross/Blue Shield of Florida, Inc., New York Life Insurance Company, United American Insurance Company, and First National Life Insurance Company, Defendants.

*ORDER OF SUMMARY JUDGMENT*

THIS CAUSE comes before the Court upon (1) Defendant Blue Cross/Blue Shield of Florida, Inc.'s ("Blue Cross's") motion to dismiss the amended complaint (DE # 31), filed May 15, 1995; (2) Defendant New York Life Insurance Company's ("New York Life's") (a) motion for instructions and an Order directed to Plaintiff's counsel (DE # 46), filed June 5, 1995; (b) combined motion to dismiss and/or for summary judgment (DE # 47), filed June 5, 1995; and (c) corrected motion for more definite statement and for RICO case statement (DE # 56), filed June 7, 1995; (3) Defendant First National Life Insurance Company's ("First National's") (a) motion to dismiss the amended complaint (DE # 53), filed June 7, 1995; and (b) motion for summary judgment (DE # 93), filed August 4, 1995; and (4) Defendant United American Insurance Company's ("United American's") corrected motion to dismiss or in the alternative for more definite statement (DE # 67).[1] On August 28, 1995, the Plaintiffs filed a single response to all of these motions with the exception of New York Life's motion for instructions and an Order directed to Plaintiffs' counsel, to which the Plaintiffs responded on September 14, 1995.[2] The Court also heard oral argument on the present motions on September 18, 1995. Upon a thorough review of the pleadings and the record in this case, as well as the arguments of counsel, and for the reasons stated below, it is hereby

ORDERED and ADJUDGED as follows:

1. Defendant Blue Cross's motion to dismiss the amended complaint (DE # 31) is GRANTED;

2. Defendant New York Life's motion for instructions and an Order directed to Plaintiff's counsel (DE # 46) is DENIED AS MOOT;

3. Defendant New York Life's combined motion to dismiss and/or for summary judgment

---

[1]This corrected motion replaces United American's original motion to dismiss or in the alternative for more definite statement (DE # 54), filed June 7, 1995. Accordingly, the original motion of June 7, 1995, is DENIED AS MOOT.

[2]The Plaintiffs had failed to respond to this motion but moved for leave to file a response out of time on September 14, 1995. That motion is hereby GRANTED.

(DE # 47) is GRANTED;

4. Defendant New York Life's corrected motion for more definite statement and for RICO case statement (DE # 56) is DENIED AS MOOT;

5. Defendant First National's motion for summary judgment (DE # 93) is GRANTED;

6. Defendant First National's motion to dismiss (DE # 53) is DENIED AS MOOT;  and

7. Defendant United American's corrected motion to dismiss (DE # 67) is GRANTED.

8. Any other motions pending in this action at this time are DENIED AS MOOT.

9. Defendants shall file a proposed Order of final summary judgment within ten (10) days of this Order.

## I.

The Plaintiffs bring this purported Class Action pursuant to the Medicare Secondary Payer statute (the "MSP statute" or the "MSP laws"), 42 U.S.C. § 1395y(b), as well as claiming violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962.  A brief overview of the MSP laws is helpful to an understanding of the issues presented by this case.  The first paragraph of the MSP statute provides, in relevant part:

A group health plan—

(I) may not take into account that an individual (or the individual's spouse) who is covered under the plan by virtue of the individual's current employment status with an employer is entitled to benefits under this subchapter under section 426(a) of this title, and

(II) shall provide that any individual aged 65 or older (and the spouse age 65 or older of any individual) who has current employment status with an employer shall be entitled to the same benefits under the plan under the same conditions as any such individual (or spouse) under age 65.

42 U.S.C. § 1395y(b)(1)(A)(i).  For employees who are eligible for Medicare by virtue of age, the employer must, therefore, offer the same health insurance to those employees as to any other employee.  Under the second paragraph, the MSP statute establishes that Medicare will not pay for services:

to the extent that—

(i) payment has been made, or can reasonably be expected to be made, with respect to the item or service as required under paragraph (1)....

42 U.S.C. § 1395y(b)(2)(A)(i). An exception to this rule is provided in subparagraph (B) of paragraph (2), which allows for Medicare to make payments conditional on their reimbursement by the "primary plan."[3] The statute also establishes a cause of action by the United States to recover double damages from any entity responsible for payment under the MSP laws and for subrogation to the rights of any individual or other entity entitled to payment from a primary plan.

In the third paragraph, the MSP statute includes a private right of action for double damages against the "primary plan which fails to provide for primary payment (or appropriate reimbursement)...." 42 U.S.C. § 1395y(b)(3)(A). This paragraph also penalizes employers and others who entice employees to opt out of the employer group health plan. 42 U.S.C. § 1395y(b)(3)(C) (providing a monetary penalty for any "employer or other entity" which "offer[s] any financial or other incentive for an individual entitled to benefits under this subchapter not to enroll (or to terminate enrollment) under a group health plan or a large group health plan which would (in the case of enrollment) be a primary plan...."); *see also* 42 U.S.C. § 1395y(b)(3)(B) (referring to 26 U.S.C. § 5000, which imposes an excise tax on an employer for a group health plan that does not comply with the MSP laws).

Under this statutory scheme, therefore, if an aged employee accepts the employer's plan, then that plan will provide primary coverage, even if by its own terms the policy states that its coverage is secondary to Medicare payment. Thus, where a group health plan attempts to offer coverage that is only secondary to Medicare's primary coverage, then that coverage becomes primary to Medicare's coverage by operation of the statute. *See Health Ins. Ass'n of Am. Inc. v. Shalala,* 23 F.3d 412, 415 (D.C.Cir.1994) ("The effect of [§ 1395y(b)(1)(A)(i) ] is to nullify any plan provision that would "carve out" expenses covered by Medicare and thus, in effect, make the plan's coverage secondary to Medicare's."), *cert. denied,* 513 U.S. 1095, 115 S.Ct. 1095, 130 L.Ed.2d 1064 (1995); *United States v. Blue Cross Blue Shield,* 859 F.Supp. 283, 287-88 (E.D.Mich.1994) (holding that "complementary coverage" plan that pays only specified expenses not covered by Medicare, such

_____

[3]The term "primary plan" is defined in 42 U.S.C. § 1395y(b)(2)(A) as a group health plan required to make primary payment under 42 U.S.C. § 13957(b)(1).

as co-payments and deductibles, contravenes the MSP statute, and stating that " "if an employer does offer a group health plan which provides coverage to the working aged, the MSP laws do require the plan to be deemed the primary payer of benefits and Medicare the secondary payer.' ") (citation omitted). If, on the other hand, the employee rejects the employer's insurance plan, then Medicare will be the primary insurer for that individual. In this case, the employee remains free to purchase supplemental insurance (known as a "Medigap" policy) to augment Medicare's benefits. *See Health Ins. Ass'n v. Shalala,* 23 F.3d at 420 ("[T]he working aged are free to purchase "Medigap' policies on their own."); *see also* 42 U.S.C. § 1395b ("Nothing contained in this subchapter shall be construed to preclude any ... individual from purchasing or otherwise securing[ ] protection against the cost of any health services."); 42 U.S.C. § 1395ss (regulating Medigap insurance).

The Plaintiffs in this action are divided into two groups. The first set of Plaintiffs, the "Individual Plaintiffs," are working individuals over the age of sixty-five whose employers provided some form of group health insurance for their employees. Each of the Individual Plaintiffs, however, opted out of the employer plan coverage in favor of Medicare payment for health care. In addition, each of the Individual Plaintiffs acquired Medigap supplemental health insurance at some time between January 1, 1983, and the present from one or more of Defendants New York Life, United American, and First National (collectively, the "Insurer Defendants"). Defendant Blue Cross acts as the fiscal intermediary or administrator for the Medicare program by processing claims for benefits under Medicare. The second group of Plaintiffs, the "Employer Plaintiffs," are the present or former employers of the Individual Plaintiffs. The Employer Plaintiffs are alleged to have participated in the Individual Plaintiffs' purchase of supplemental health coverage in addition to Medicare. In particular, both of the named Employer Plaintiffs provided payroll deduction services through which the Individual Plaintiffs' insurance premiums were deducted from their paychecks, and payment was remitted directly to the insurer in a single check. In addition, Defendant Winter Haven Citrus Growers Association ("Winter Haven") paid half the insurance premium for its employees who purchased insurance to supplement their Medicare coverage.

Beginning in 1993, the Employer Plaintiffs received demands from Medicare for

reimbursement of health care costs paid by Medicare to providers rendering services for the Individual Plaintiffs. The Employer Plaintiffs claim that they have been damaged in that they "did not receive the health insurance coverage they were required to provide by law, and further may be damaged because they are now subjected to substantial reimbursement claims by Medicare for the conditional provision of benefits on behalf of Employer Plaintiffs' employees over the age of 65 or with spouses over the age of 65." Am.Compl. ¶ 6. The Individual Plaintiffs allege that they have been damaged in that they either paid insurance premiums for coverage that they did not receive, may be legally obligated to repay any claims that were paid by Medicare, or have been denied coverage altogether by one of the Insurer Defendants because their coverage, by contract, is limited to a payment secondary to Medicare. *Id.* ¶ 5.

The Plaintiffs thus contend that the Insurer Defendants improperly sold Medigap insurance when they were required by law to provide primary insurance coverage under the MSP laws. Plaintiffs further assert that the Insurer Defendants' use of the mail and wires to transmit false information about health insurance, solicit customers, and pay coverage secondary to that of Medicare constituted mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. Plaintiffs assert that through these instances of mail and wire fraud, the Insurer Defendants, acting with or assisted by Defendant Blue Cross, engaged in a pattern of racketeering activity. Essentially, Plaintiffs' Amended Complaint alleges that the Defendants knew they were not legally able to sell Medigap-only policies under the MSP laws, but continued to do so nonetheless, representing on each occasion that this supplemental coverage was legal. According to the Plaintiffs, the Defendants' conduct was intended to defraud the Plaintiffs so the Defendants could obtain policy premiums. The Plaintiffs include seven counts in their Amended Complaint for: (I) Double Damages Under the MSP Statute; (II) Breach of Contract; (III) Declaratory Relief; (IV) Violation of RICO § 1962(a); (V) Violation of RICO § 1962(b); (VI) Violation of RICO § 1962(c); and (VII) Violation of RICO § 1962(d). Blue Cross is named as a Defendant in Counts III-VII, while the Insurer Defendants are named in each count of the Amended Complaint.

The Insurer Defendants have separately moved to dismiss the Amended Complaint and/or

for summary judgment, primarily on the grounds that the insurance they sold to the Plaintiffs did not constitute a "group health plan" subject to regulation under the MSP statute.  In the alternative, the Insurer Defendants have also asserted that (1) the Plaintiffs lack standing to maintain their claims; (2) the Plaintiffs have failed to exhaust administrative remedies, depriving this Court of subject-matter jurisdiction;  (3) the Plaintiffs' claims are time-barred;  (4) Plaintiffs' RICO claims fail to plead fraud with particularity under Rule 9(b) of the Fed.R.Civ.P;  and (5) a more definite statement with respect to Plaintiffs' RICO claims is necessary before the Defendants can properly respond.  Defendant Blue Cross has also moved to dismiss the Amended Complaint arguing the same five alternative grounds asserted by the Insurer Defendants.  Blue Cross additionally argues that (1) the Plaintiffs' claims against Blue Cross should be dismissed on the basis of sovereign immunity;  (2) the Amended Complaint fails to allege the elements of aiding and abetting liability under the RICO statute;  (3) Plaintiffs have failed to aver facts demonstrating Blue Cross's involvement in the alleged RICO enterprise sufficient to meet the pleading requirements under each of the four subsections of 18 U.S.C. § 1962.

II.

The following standards of review are applicable to the motions before the Court:

A. *Motions to Dismiss*

The purpose of a Rule 12(b)(6) motion is to test the facial sufficiency of the statement of claim for relief.  It is read alongside Fed.R.Civ.P. 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  The rule is not designed to strike inartistic pleadings or to provide a more definite statement to answer an apparent ambiguity, and the analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto. *See* 5 Charles A. Wright & Arthur Miller, *Federal Practice and Procedure* § 1356 at 590-92 (1969) (Wright & Miller).  However, where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a

motion for summary judgment. *Venture Assoc. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir.1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."). Nonetheless, for the purposes of the motion to dismiss, the complaint must be construed in a light most favorable to the plaintiff and the factual allegations taken as true. *See SEC v. ESM Group, Inc.,* 835 F.2d 270, 272 (11th Cir.), *reh'g denied,* 840 F.2d 25, *cert. denied,* 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988).

> The Eleventh Circuit has recently written:
>
> [T]he Supreme Court has stated that the "accepted rule" for appraising the sufficiency of a complaint is "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957); *Tiftarea Shopper, Inc. v. Georgia Shopper, Inc.,* 786 F.2d 1115, 1117-18 (11th Cir.1986) (quoting *Conley*).

*Id.* A complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory. *Robertson v. Johnston,* 376 F.2d 43 (5th Cir.1967).[4] We hasten to add that this motion is viewed with disfavor and rarely granted. *See e.g., Madison v. Purdy,* 410 F.2d 99, 100 (5th Cir.1969); *International Erectors, Inc. v. Wilhoit Steel Erectors & Rental Service,* 400 F.2d 465, 471 (5th Cir.1968) ("Dismissal of a claim on the basis of barebone pleadings is a precarious disposition with a high mortality rate."). The pleadings must show, in short, that the ATTACHMENT—Continued

Plaintiffs have no claim before the 12(b)(6) motion may be granted.

B. *Motions for Summary Judgment*

> The standard to be applied in reviewing summary judgment motions is stated unambiguously in Rule 56(c) of the Federal Rules of Civil Procedure:
>
> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there

---

[4]In *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

It may be entered only where there is *no* genuine issue of material fact. Moreover, the moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

> In applying this standard, the Eleventh Circuit has explained:

> In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608; *Marsh,* 651 F.2d at 991. All reasonable doubts about the facts should be resolved in favor of the non-movant. *Casey Enterprises v. Am. Hardware Mutual Ins. Co.,* 655 F.2d 598, 602 (5th Cir.1981). If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Marsh,* 651 F.2d at 991; *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co.,* 420 F.2d at 1213. If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Impossible Electronic,* 669 F.2d at 1031; *Croley v. Matson Navigation Co.,* 434 F.2d 73, 75 (5th Cir.1970).

> Moreover, the party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. at 160, 90 S.Ct. at 1609-10; *Marsh,* 651 F.2d at 991. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg,* 370 F.2d 605, 611-12 (5th Cir.1967). *See Dalke v. Upjohn Co.,* 555 F.2d 245, 248-49 (9th Cir.1977).

*Clemons v. Dougherty County,* 684 F.2d 1365, 1368-69 (11th Cir.1982); *see also Amey, Inc. v. Gulf Abstract & Title, Inc.,* 758 F.2d 1486, 1502 (11th Cir.1985), *cert. denied,* 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986).

The United States Supreme Court has recently provided significant additional guidance as to the evidentiary standard which trial courts should apply in ruling on a motion for summary judgment:

> [The summary judgment] standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Brady v. Southern R. Co.,* 320 U.S. 476, 479-80, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943).

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The Court in *Anderson* further stated that "[t]he mere existence of a scintilla of evidence in support

of the position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252, 106 S.Ct. at 2512. In determining whether this evidentiary threshold has been met, the trial court "must view the evidence presented through the prism of the substantive evidentiary burden" applicable to the particular cause of action before it. *Id.* at 254, 106 S.Ct. at 2513. If the non-movant in a summary judgment action fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted. *Id* at 254-55, 106 S.Ct. at 2513-14.

In another recent case, the Supreme Court has declared that a non-moving party's failure to prove an essential element of a claim renders all factual disputes as to that claim immaterial and requires the granting of summary judgment:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will *bear* the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986) (emphasis added).

C. *Rule 9(b) of the Fed.R.Civ.P.*

Rule 9(b) of the Federal Rules of Civil Procedure provides that:

> [i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

Fed.R.Civ.P. 9(b). This Rule "serves an important purpose in fraud actions by alerting defendants to the "precise misconduct with which they are charged' and protecting defendants "against spurious charges of immoral and fraudulent behavior.' " *Durham v. Business Management Associates,* 847 F.2d 1505, 1511 (11th Cir.1988) (quoting *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.,* 742 F.2d 786, 791 (3d Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985)). Further, "Rule 9(b) must be read in conjunction with Rule 8(a) [of the Federal Rules of Civil Procedure], which requires a plaintiff to plead only a short, plain statement of the grounds

upon which he is entitled to relief." *O'Brien v. National Property Analysts Partners,* 719 F.Supp. 222, 225 (S.D.N.Y.1989) (citing *Ross v. A.H. Robins Co.,* 607 F.2d 545, 557 n. 20 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980)). *See also Durham,* 847 F.2d at 1511 ("The application of [Rule 9(b) ] must not abrogate the concept of notice pleading."); *Berk v. Ascott Investment Corp.,* 759 F.Supp. 245, 254 (E.D.Pa.1991).

Rule 9(b) may be satisfied if the complaint sets forth:

(1) precisely what statements were made in what documents or oral representations or what omissions were made, and

(2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and

(3) the content of such statements and the manner in which they misled the plaintiff, and

(4) what the defendants "obtained as a consequence of the fraud."

*Fitch v. Radnor Industries, Ltd.,* No. 90-2084, 1990 WL 150110, at *2 (E.D.Pa. Sept.27, 1990) (quoting *O'Brien,* 719 F.Supp. at 225). *See also Leonard v. Stuart-James Co.,* 742 F.Supp. 653, 659 (N.D.Ga.1990) (Motion to dismiss granted where complaint failed to allege "specifically when, where, by whom, or specifically what the representation was."). However, "alternative means are also available to satisfy the rule." *Durham,* 847 F.2d at 1512 (citing *Seville Indus.,* 742 F.2d at 791 (list containing allegations of fraud describing nature and subject of statements found to be sufficient, even where precise words used were not alleged)). We review the Defendants' motions against these standards.

III.

Because the Defendants' motions present a number of the same issues for the Court's consideration, we address each issue presented by the Defendants' motions rather than analyzing each motion separately.

A. *Scope of the MSP Statute's Coverage*

As an initial matter, although some of the Insurer Defendants have moved to dismiss and some for summary judgment, because we consider matters beyond the pleadings, each of the Insurer Defendants' motions is treated as a motion for summary judgment under Federal Rules of Civil

Procedure 12(b) and 56 for purposes of this issue. *See* Fed.R.Civ.P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."). The Plaintiffs have filed a single response to all of the Insurer Defendants' motions and have provided the materials called for on summary judgment. Thus, all parties have been given a full and fair opportunity to come forward with evidence supporting their arguments with respect to the present issue.

The primary contention presented by the Insurer Defendants' motions is whether the policies they sold constitute "group health plans" within the meaning of the MSP statute. As noted above, the MSP statute's directive is addressed only to any "group health plan." 42 U.S.C. § 1395y(b). The MSP laws define the term "group health plan" as follows:

> "group health plan" has the meaning given such term in section 5000(b)(1) of Title 26, without regard to section 5000(d) of Title 26.

42 U.S.C. § 1395y(b)(1)(A)(v). Section 5000(b)(1) of Title 26, in turn, provides:

> The term "group health plan" means a plan (including a self-insured plan) of, or contributed to by, an employer (including a self-employed person) or employee organization to provide health care (directly or otherwise) to the employees, former employees, the employer, others associated or formerly associated with the employer in a business relationship, or their families.

26 U.S.C. § 5000(b)(1). The parties have not cited, nor have we been able to locate, a single case construing this definition.

The regulations promulgated by the Health Care Financing Administration ("HCFA") on behalf of the Secretary of Health and Human Services further define the phrase "group health plan" as follows:

> Group health plan (GHP) means any arrangement made by one or more employers or employee organizations to provide health care directly or through other methods such as insurance or reimbursement, to current or former employees, the employer, others associated or formerly associated with the employer in a business relationship, or their families, that—
>
> (1) Is of, or contributed to by, one or more employers or employee organizations.

(2) If it involves more than one employer or employee organization, provides for common administration.

(3) Provides substantially the same benefits or the same benefit options to all those enrolled under the arrangement.

The term includes self-insured plans, plans of governmental entities (Federal, State and local), and employee organization plans; that is, union plans, employee health and welfare funds or other employee organization plans. The term also includes employee-pay-all plans, which are plans under the auspices of one or more employers or employee organizations but which receive no financial contributions from them. The term does not include a plan that is unavailable to employees; for example, a plan only for self-employed persons.

42 C.F.R. § 411.101 (effective October 2, 1995).[5]

The parties have expended considerable efforts in arguing whether or not the inclusion of "employee-pay-all" plans in the definition of "group health plan" in the regulations goes beyond the meaning of the statute. However, we need not address this question because we find that the basis upon which the Insurer Defendants' policies fall outside the statutory definition of "group health plan" is more fundamental. The Insurer Defendants were simply not providing group insurance or a "plan" of insurance to the Plaintiffs. The pleadings and the record in this case plainly demonstrate that the Insurer Defendants issued *individual* policies of insurance to the Individual Plaintiffs to supplement their Medicare coverage. *See* Individual Health Insurance Application of John D. Wilkerson, attached as Exh. to Affid. Francis J. Mullin; Insurance applications and policies issued to Duane G. Norman, Nadine Brooks, Mildred McIver, John D. Wilkerson, and Leonard Struthers, First National's Mot. Summ. J., Exhs. 1-2; Insurance policies issued to Nadine Brooks, Mildred McIver, Duane Norman, Madie Wilkerson, and John D. Wilkerson, Deft. United American's Corrected Mot. Dismiss, Exhs. F-J; Affid. Linda Massey ¶ 9 (listing individual insureds, policy numbers, dates of application and issuance).

The Individual Plaintiffs applied separately for insurance with the Insurer Defendants and were issued independent Medigap insurance policies by the Insurer Defendants. For example, Duane Norman submitted an application with Defendant First National on February 6, 1991, Nadine

---

[5]This regulation does not apply directly to the claims at issue due to its recent enactment. *See Health Ins. Ass'n of Am. v. Shalala,* 23 F.3d at 425 (interpretive regulations apply could not be applied retroactively). Thus, the definition is not entitled to deference. *Id.*

Brooks applied with First National on November 1, 1991, and Leonard Struthers applied on November 15, 1991. Affid. Linda J. Massey ¶ 9; First National's Mot. Summ. J., Composite Exhs. 1-2. Separate policies of insurance were issued to these three Individual Plaintiffs on March 1st, November 1st, and December 1st, 1991, respectively. *Id.* The record further shows that Duane Norman paid his insurance premiums directly by preauthorized draft from his personal bank account between March 1 and November 1, 1991. Only at that time did he commence payment of his policy premiums through payroll deduction. Affid. Linda J. Massey ¶ 10. Similarly, Nadine Brooks obtained insurance issued by Defendant New York Life on October 1, 1986, while John Wilkerson obtained a policy from New York Life on November 1, 1984, and Mildred McIver's policy with New York Life was issued on December 25, 1985. *See* Affid. Joan Brady ¶ 2. This same disparity in dates of issuance for these individual policies is present with the insurance provided by Defendant United American. Nadine Brooks's policy became effective on August 28, 1989, Mildred McIver's commenced on July 11, 1989, Duane Norman's began May 1, 1990, Madie Wilkerson's coverage became effective July 7, 1989, and John Wilkerson's policy commenced July 11, 1989. Deft. United American's Corr. Mot. Dismiss, Exhs. F-J. Thus, it is plain from the record before this Court that the Insurer Defendants issued only *individual* policies of insurance to the Individual Plaintiffs in this action.

Furthermore, the record is devoid of any indication that a group insurance policy, comprehensive policy, blanket policy, or other master plan of insurance ever issued to any of the Employer Plaintiffs by the Insurer Defendants. *See* 1 John A. Appleman & Jean Appleman, *Insurance Law & Practice,* § 41 (1981) ("Group insurance may [ ] be considered the coverage of a number of individual persons by one comprehensive policy, with certificates as evidences of such coverage, usually for the primary purpose of protecting and providing for employees."). A group policy or plan of insurance makes no sense without a group insurance document to establish the levels and types of coverage provided by the plan. The Insurer Defendants aptly pointed out at oral argument that where they provided *only* supplemental Medigap health insurance to individuals, if this coverage is deemed a "group health plan" and the primary payer under the MSP statute, there

would be no means of determining what coverages would be provided by that "group health plan." By contrast, a true "plan" of insurance entails a detailed description of the specific coverages and exclusions provided in the insurance plan. *Compare* FCHAT Summary Plan Description, attached as Exh. to Supp. Affid. Francis Mullin. Where a true group plan attempts to carve out coverage for insureds eligible for Medicare, the MSP statute's elimination of the illegal carve-out results in that pre-defined level of coverage being applied to employees eligible for Medicare on the same terms as if they were not eligible for Medicare. There is no similar means of determining coverage under the separate insurance policies in this case if they are deemed a "group health plan." As counsel observed, we would be required to formulate an entire scheme of coverages, deductibles, and co-pays to make these individual, supplemental policies into primary insurance. We do not believe the MSP statute intended such a result, and that intention is reflected in the statute's limitation, by its own terms, to regulation of "group health plans."

The record further establishes that during the entire relevant period, the Employer Plaintiffs had in place employer group health plans, first through the Florida Citrus Health and Accident Trust ("FCHAT"), a self-insured trust, and later through The Travelers Insurance Company ("Travelers"). *See, e.g.,* Affidavit of Richard Ruis WW 3-6; First National Life's Mot. Summ. J., Exh. 3, ¶ 2-3.[6] Finally, it is clear from the record that each of the Individual Plaintiffs in this action opted out of the FCHAT and Travelers plans. *See* First National Life's Mot. Summ. J., Exh. 4, at ¶ 3; Affid. Richard Ruis ¶ 6. Having rejected their employers' group health plans, the Individual Plaintiffs legitimately made Medicare their primary insurance and were able to purchase supplemental Medigap policies to further protect themselves against the cost of health care. *See Health Ins. Ass'n v. Shalala,* 23 F.3d at 420 ("[T]he working aged are free to purchase "Medigap' policies on their own."); *see also* 42 U.S.C. § 1395b ("Nothing contained in this subchapter shall be construed to preclude any ...

---

[6]We also note that the undisputed record evidence shows that the FCHAT insurance plan offered by the Employer Plaintiffs attempted to "carve out" insurance benefits covered by Medicare, in violation of the MSP statute. Affid. Francis J. Mullin, Exh. 1 at 9-10 (FCHAT Summary Plan Description dated Feb. 1, 1983); Exh. 2 at 9-10 (FCHAT Summary Plan Description dated October 1, 1985); Affid. Richard Ruis ¶ 5. Thus, it is unremarkable in this case that many individuals did opt out of the Employer Plaintiffs' group health plan.

individual from purchasing or otherwise securing[ ] protection against the cost of any health services."); 42 U.S.C. § 1395ss (regulating Medigap insurance); 42 C.F.R. § 411.72(c) ("An employee or spouse may refuse the health plan offered by the employer. If the employee or spouse refuses the plan—(1) Medicare is primary payer for that individual; and (2) the plan may not offer that individual coverage complementary to Medicare."). The Insurer Defendants completed the picture by providing that supplemental or Medigap insurance coverage to the Individual Plaintiffs.

Plainly if the Individual Plaintiffs remained free under the law to purchase Medigap policies once they had opted out of their employers' plans, then the statute contemplates that some entity would be permitted by law to sell such individual Medigap insurance. Without this corollary, there would be no way for individuals covered by Medicare to buy supplemental coverage. It is beyond peradventure that the statutory scheme expects and permits such policies to be sold. *See* 42 U.S.C. § 1395ss (regulating Medigap insurance); 42 U.S.C. § 1395b ("Nothing contained in this subchapter shall be construed to preclude any ... individual from purchasing or otherwise securing[ ] protection against the cost of any health services."). This permissible Medigap insurance is all the Insurer Defendants in this case provided.

Our conclusion that these individual Medigap policies do not constitute a "group health plan" as contemplated by the MSP statute is buttressed by the regulations promulgated by the Secretary of HHS to interpret the MSP statute. The regulations provide that once an employee or spouse has rejected the employer's health plan, "*Medicare is the primary payer for that individual....*" 42 C.F.R. § 411.72(c)(1). The implication of this regulation is that the group plan contemplated by the statute is the first-level plan of insurance provided by or under the auspices of the employer—not the additional Medigap coverage that the employee or spouse may purchase once she has opted out of the employer's plan. The statutory scheme of the MSP laws simply was not intended to cover, and does not include, these supplemental Medigap policies.

The Plaintiffs have made much of the fact that the Employer Plaintiffs provided payroll deduction for their employees' supplemental insurance, and, particularly, that Plaintiff Winter Haven may have violated the MSP laws, 42 U.S.C. § 1395y(b)(3)(C) (establishing civil penalties for any

employer providing incentives for its aged employees to opt out of the employer's group health plan coverage), by contributing one half of the premium for its employees' supplemental insurance. Plaintiffs have also attempted to show the group nature of this insurance through evidence that the Insurer Defendants may have solicited business through the Employer Plaintiffs in some instances.[7] However, none of these assertions alters the fundamental fact in this case—that there was simply no group insurance sold by the Insurer Defendants. The insurance coverage provided by the policies at issue in this case was offered and accepted only on an *individual* basis, to *individual* policy-holders. Therefore, there is no "plan" offered by these Defendants which could be considered the "employer group plan" subject to the MSP statute or a "primary plan" against which an individual action may be brought under the MSP statute's enforcement provisions.

On this basis alone, the Plaintiffs' entire complaint is subject to summary judgment in favor of each of the Defendants, including Blue Cross. The Plaintiffs' theory of recovery under each count of the Amended Complaint, and against every Defendant, is premised upon their establishing the illegality under the MSP statute of the Insurer Defendants' sales of Medigap policies to the Individual Plaintiffs. Because we find that these policies were not subject to the MSP laws' regulation, the Plaintiffs' additional claims for reformation of the insurance contracts, for declaratory relief, and for violation of the RICO laws on the basis of the fraudulent marketing and sale of these policies also fail. Therefore, summary judgment for every Defendant in this action is appropriate as to the Plaintiffs' entire Amended Complaint. Having reached this conclusion, we need not address the Defendants' remaining contentions in their motions. Nonetheless, we address the following arguments to provide a complete record in this action.

B. *The Plaintiffs' Standing to Maintain Their Claims*

The Defendants have also challenged the Plaintiffs' standing to maintain the claims presented

---

[7]With respect to this particular argument, we note that the sale of Medigap policies is specifically regulated by statute. *See* 42 U.S.C. § 1395ss. The statute establishes criminal and civil penalties for failure to comply with its provisions. 42 U.S.C. § 1395ss(d). However, no private cause of action is permitted by the statute. Thus, to the extent that the Plaintiffs challenge the manner in which the Insurer Defendants sold Medigap policies, they can state no cause of action.

by their Amended Complaint. Were the Amended Complaint not subject to summary judgment on the aforementioned basis, *see supra,* Part III.A., the Individual Plaintiffs claims for breach of contract (Count II) and for violation of the RICO statute (Counts IV-VII) would be subject to dismissal nonetheless for lack of standing. Similarly, if the Employer Plaintiffs could otherwise proceed in this action, their claims for double damages under the MSP statute (Count I) and breach of contract (Count II) would fail for lack of standing. The Omnibus Budget Reconciliation Act of 1989 ("OBRA 89") established a private right of action under the MSP statute. *See* H.R.Conf.Rep. No. 386, 101st Cong., 1st Sess. 1989, *reprinted in,* 1989 U.S.C.C.A.N. 3018. Section 1395y(b)(3)(A) now provides that "[t]here is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with such paragraphs (1) and (2)(A)." 1395y(b)(3)(A). The Plaintiffs bring their MSP claims pursuant to this provision. The Defendants challenge the Plaintiffs' standing to bring claims pursuant to the MSP statute on the grounds that they have suffered no injury.

The Supreme Court has given the following explanation of the requirements of standing to bring suit in the federal courts:

> In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise. *E.g.,* Barrows v. Jackson, 346 U.S. 249, 255-256, 73 S.Ct. 1031, 1034-1035, 97 L.Ed. 1586 (1953). In both dimensions it is founded in concern about the proper—and properly limited—role of the courts in a democratic society. See Schlesinger v. Reservists to Stop the War, 418 U.S. 208, 221-227, 94 S.Ct. 2925, 2932-2935, 41 L.Ed.2d 706 (1974); United States v. Richardson, 418 U.S. 166, 188-197, 94 S.Ct. 2940, 2952-2956, 41 L.Ed.2d 678 (1974) (Powell, J., concurring).

*Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975).

The Constitutional standing requirements give substance to Article III's grant of jurisdiction over "cases" and "controversies." *Association of Data Processing Svc. Org., Inc. v. Camp,* 397 U.S. 150, 151, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). Federal courts have no power to entertain claims not rising to this level. Stated in terms of standing, a plaintiff must " "allege[ ] such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court

jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin,* 422 U.S. at 498, 95 S.Ct. at 2204 (quoting *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)). The federal judiciary may not reach out to decide disputes which, although they may redress social wrongs, do not address an "injury in fact" to the plaintiff who has brought the charge before it. *See Air Courier Conference v. American Postal Workers Union,* 498 U.S. 517, 523, 111 S.Ct. 913, 917, 112 L.Ed.2d 1125 (1991) (citing *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984)).

In addition to the Constitutional mandate, the "prudential" limitations placed upon the exercise of federal jurisdiction include:

> [ (1) ] the principle that federal courts should avoid deciding generalized grievances that present abstract questions of wide public significance, [ (2) ] the requirement that the plaintiff's complaint be within the zone of interests protected by the statute or constitutional guarantee at issue, and [ (3) ] the requirement that a plaintiff ... assert his own legal rights and interest, not the rights of third parties.

*Church v. City of Huntsville,* 30 F.3d 1332 (11th Cir.1994) (alterations in original) (quoting *Cone Corp. v. Florida Dep't of Transp.,* 921 F.2d 1190, 1203 n. 43 (11th Cir.), *cert. denied,* 500 U.S. 942, 111 S.Ct. 2238, 114 L.Ed.2d 479 (1991)); *see also Clarke v. Securities Indus. Ass'n,* 479 U.S. 388, 396, 107 S.Ct. 750, 755, 93 L.Ed.2d 757 (1987).

As noted above, the Plaintiffs in this action fall into two distinct categories: (1) the individuals who sought coverage under the insurance at issue in this case; and (2) the employers of these individuals. The question of standing is different for the two groups. The Individual Plaintiffs claim to have suffered injury in three ways. First, the Amended Complaint asserts that "in many circumstances working aged employees are being refused, both Medicare and group health insurance coverage...." Am.Compl. ¶ 27. However, the pleading does not allege that each of the Individual Plaintiffs has been denied coverage for medical care. The Individual Plaintiffs also allege that they have been damaged in that they have paid premiums for insurance which has not been provided. Am.Compl. ¶ 5. However, unless the Plaintiffs are also able to allege that they have been denied coverage for any claim, they have not been damaged by their payment of premiums. Finally, the Individual Plaintiffs assert that they have been injured because they "may be legally obligated

to repay all or a portion of coverage provided by Medicare...." *Id.* The MSP laws, however, provide no basis upon which an individual beneficiary would be called upon to repay the United States for payments not reimbursed by the "primary plan." Thus, the Individual Plaintiffs' sole injury for purposes of standing is the claimed denial of insurance benefits.

While this issue has not been directly addressed by any federal court, a closely analogous case was presented in *Wheeler v. Travelers Ins. Co.,* 22 F.3d 534 (3d Cir.1994). In *Wheeler,* the plaintiff was injured when she was struck by a car crossing the street. She sustained injuries requiring medical care at a cost of $25,000. At the time of the accident, the plaintiff was enrolled in Medicare and also was covered by a no-fault automobile insurance policy issued to her by Travelers Insurance Company ("Travelers"). Medicare paid $21,947.15 directly to the health care providers for the plaintiff's care, and Travelers paid $3600.46 to the plaintiff to cover the difference. The plaintiff and six others then initiated individual and class actions against six automobile insurers, including Travelers, alleging injury in an automobile accident and having incurred medical expenses for which the defendants were liable under the Pennsylvania No-Fault Act. The claim was premised on the fact that the MSP statute made the insurer-defendants primarily liable for the plaintiffs' medical expenses. For reasons undisclosed in the published opinions, the District Court remanded the entire action to state court with the single exception of plaintiff Wheeler's individual claim which was maintained pursuant to the Court's diversity jurisdiction. On appeal, the Third Circuit found that the plaintiff did not have standing to maintain the action because any recovery she might gain would have to be remitted to Medicare under the MSP laws. The Court there stated:

> We conclude that Wheeler does not have constitutional standing. She has not alleged or established that she suffered any actual or threatened injury from Travelers' denial of her claim for no-fault benefits for she acknowledges that Medicare paid the medical expenses for which she seeks a recovery. In essence, she therefore pleads that Travelers wronged, but did not injure her. Moreover, she concedes that she "will be obliged to remit any payment she now receives from Travelers to Medicare pursuant to 42 U.S.C. § 1395y(b)(1) [ (1982) ]." Thus, Wheeler never has had anything to gain from this lawsuit. Therefore, she does not have standing for, as the Supreme Court stated in *Simon,* [*v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)], "[t]he necessity that the plaintiff who seeks to invoke judicial power stand to profit in some personal interest remains an Art. III requirement. A federal court cannot ignore this requirement without overstepping its assigned role in our system of adjudicating only actual cases and controversies." [*Simon,* 426 U.S. at 39, 96 S.Ct. at 1925].

*Id.* at 538. The Court then went on to find that even had the plaintiff met the Constitutional standing requirements, she would not have satisfied the prudential requirements because she was essentially seeking to vindicate the rights of a third party—the United States. *Id.* at 538-39 ("Inasmuch as Medicare is entitled to receive any no-fault benefits that Travelers owes Wheeler, and Congress intended [the MSP statute] to benefit the government by reducing Medicare expenditures, the government is the party "best suited to assert' this claim. The United States has not assigned its claim to Wheeler. Thus, Wheeler fails to satisfy the prudential requirements for standing because she improperly is seeking to vindicate the rights of a third-party, the United States.")

*Wheeler* is distinguishable from the present case in that the plaintiff in that case was proceeding under a state insurance statute rather than directly under the MSP laws. More importantly, however, the *Wheeler* decision explicitly distinguished a case in which a plaintiff may be entitled to recover amounts over and above her actual injury. *See id.* at n. 10 ("We do not deal in this case with a plaintiff who has not been injured but nevertheless asserts that she has standing because she is entitled to seek a recovery over and above her actual losses."). The MSP statute provides this precise additional recovery to a private litigant. Although the Individual Plaintiffs who recover reimbursement for claims paid by Medicare and denied by the Insurer Defendants may be required to turn over the amount of such claims to the United States. *See* 42 U.S.C. § 1395y(b)(2)(ii) (providing action by the United States to recover from "any other entity" that has received payment from the primary plan responsible for payment under the MSP laws). Thus, the Individual Plaintiffs who have not suffered an injury in that they have been covered by Medicare for the medical care they have received retain a sufficient interest in this action for purposes of the Constitutional "case or controversy" requirement. We similarly find that the Individual Plaintiffs have pled a sufficient stake in the outcome of their claim for declaratory relief in Count III of the Amended Complaint to present a case or controversy for the Court. The Individual Plaintiffs are currently subject to having their claims rejected by Medicare on the grounds that the MSP laws make some other insurer the primary payer for her health care. Until a determination is reached as to what entity is responsible for primary payment, the Individual Plaintiffs face the realistic

possibility that their claims will continue to go unpaid, and health care providers may seek payment from them individually. With respect to the Individual Plaintiffs' claims for breach of contract in Count II, and for civil enforcement of the RICO statute in Counts IV-VII, however, unless each Individual Plaintiff can plead a denial of insurance coverage, he has sustained no injury to support Constitutional standing. Accordingly, were this case to survive summary judgment as to the coverage of the MSP laws, *see supra* Part III.A., the claims for breach of contract (Count II), and for violations of the RICO statute (Counts IV-VII) would still fail as asserted by the Individual Plaintiffs because they lack Constitutional standing as to these causes of action.

With respect to the Employer Plaintiffs, the Amended Complaint states that Medicare is now seeking reimbursement against them for payments it made on the condition that the expenses be reimbursed by the primary plan. Thus, the Employer Plaintiffs appear to have suffered an injury. However, the employer Plaintiffs lack standing to assert a claim under the MSP statute based on the "prudential" limitations on standing because their claims do not fall within the "zone of interests" protected by the MSP statute. *See Warth v. Seldin,* 422 U.S. at 500, 95 S.Ct. at 2205. The "zone of interests" test compels us to examine the "nature and source" of the plaintiff's allegations and inquire whether the Congress, in passing the MSP laws, intended to confer the right to sue upon individuals in the position of the Employer Plaintiffs. *Id.* Until early 1990, the employer Plaintiffs provided a group health plan for employees through FCHAT, a self-insured trust. Although FCHAT has since been terminated, the employer members of the trust remain liable for claims for the period prior to June 1, 1990. *See* Notice of Trust Termination, attached as Exh. to Deft. New York Life's Mot. Dismiss and Summ. J. (stating that trust participants may be assessed if claims beyond the trust's finances are filed under Fla.Stat. § 624.4415). Thus, if FCHAT were deemed the "primary plan" within the meaning of the statute, then the employer Plaintiffs could themselves be responsible for any claims prior to June 1, 1990. We do not believe that Congress intended to create a private cause of action for double damages by one potentially liable party against another. The statute contemplates suits by the United States and by individuals denied coverage, but the Employer Plaintiffs' claims fall well outside of the "zone of interests" encompassed by the MSP laws.

The Employer Plaintiffs similarly lack standing to maintain a cause of action for breach of contract. The insurance policies in this case were issued to individuals and establish health insurance coverage for those individuals only. The Employer Plaintiffs are not parties to these agreements. Thus, the Employer Plaintiffs are similarly barred from bringing a claim for breach of contract. However, to the extent that the Employer Plaintiffs seek a declaration that it is the Insurer Defendants rather than themselves, FCHAT or Travelers who constitute the "primary plan" within the meaning of the MSP laws, these Plaintiffs' rights and obligations are very much at issue. In addition, the Employer Plaintiffs have sufficiently pled an injury for purposes of their RICO claims in Counts IV-VII. In sum, even if the Plaintiffs' claims under the MSP laws could survive summary judgment, the Plaintiffs claim for double damages pursuant to the MSP laws (Count I) must be dismissed with respect to the Employer Defendants; the claim for breach of contract (Count II) must be dismissed as to all of the Plaintiffs; and the claims for violations of the RICO laws (Counts IV-VII) must be dismissed as to the Individual Plaintiffs for lack of standing.

C. *Exhaustion of Administrative Remedies*

As stated above, we need not reach this issue because of our conclusion that the insurance policies at issue in this case fall outside the scope of the MSP laws and, therefore, that final summary judgment must be granted. Had the Plaintiffs' claims survived that argument, however, the Plaintiffs would not be barred from suit by a failure to exhaust administrative remedies. The Defendants have argued that the Plaintiffs must exhaust administrative remedies before bringing a claim in this case, relying upon 42 U.S.C. § 405(g)-(h). Section 405(g) of Title 42 provides for judicial review of a party's Medicare claim in federal court after exhaustion of administrative remedies. Section 405(h) then limits the ability of a party to bring any other type of claim involving the Social Security Act in federal court, stating "*No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.*" 42 U.S.C. § 405(h) (third sentence) (emphasis added). Thus, the statute bars federal question jurisdiction over claims "arising under" the Social Security Act, making judicial review of final agency action under section 405(g) the sole means of

judicial review for those claims. *Heckler v. Ringer,* 466 U.S. 602, 615, 104 S.Ct. 2013, 2021, 80 L.Ed.2d 622 (1984). In *Heckler,* the Supreme Court construed the "arising under" phrase broadly "to include any claims in which "both the standing and the substantive basis for the presentation' of the claims is the Social Security Act," including Constitutional challenges to eligibility requirements for payment of benefits under the statute. *Id.* at 615, 104 S.Ct at 2021.

In this case, however, the claim is plainly not brought against the United States or the Secretary of Health and Human Services ("HHS").[8] Thus, section 405(h) has no application here. Moreover, section 405(h) limits its bar to claims "arising under this subchapter." 42 U.S.C. § 405(h). Section 405(h) is part of Subchapter III of Chapter 7 of Title 42, while section 1395y, the MSP statute, is part of Subchapter XVIII of the same Chapter of Title 42. Thus, by its own language, section 405(h) is inapplicable to this action. Furthermore, Congress's explicit creation of a private cause of action in the MSP statute takes these claims beyond the scope of the general bar in section 405(h). *See* 42 U.S.C. § 1395y(b)(3)(A) ("There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with such paragraphs (1) and (2)(A)"). The cases cited by the Defendants in which the jurisdictional bar of section 405(h) was applied concerned challenges to individual benefit determinations and are inapplicable to the present claims. Thus, a plaintiff proceeding under the MSP laws is not required to exhaust administrative remedies before proceeding to federal court.

D. *Statute of Limitations Defenses*

Once again, we need not reach this issue to conclude that the Plaintiffs' claims are subject to summary judgment in favor of the Defendants in this case. Nonetheless, were the Amended Complaint to survive summary judgment, Plaintiffs' claims under the MSP laws would be curtailed by the statute of limitations, and their allegations of RICO violations would be time-barred altogether. The Amended Complaint alleges causes of action dating from January 1, 1983, until the

---

[8]Blue Cross asserts that the claims against it are really against the United States, the Secretary, or HCFA. However, given the remaining reasons why exhaustion is not required, this argument is irrelevant to the exhaustion question.

present time—a period spanning more than twelve years. Congress has not provided a statute of limitations within the MSP statute itself. In addition, no Court has determined the applicable limitations period for a private cause of action under the statute. Plaintiffs have suggested that the general six-year period provided in 28 U.S.C. § 2415(a) should apply in this case, citing *Provident Life & Accident Ins. Co. v. United States,* 740 F.Supp. 492, 505 (E.D.Tenn.1990) (applying section 2415(a) to counterclaims brought by the United States under the MSP statute). However, section 2415(a) applies only to actions brought by the United States as plaintiff. 28 U.S.C. § 2415(a) ("[E]very action for money damages brought *by the United States or any officer or agency thereof* which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues....") (emphasis added).

Defendant New York Life argues for the application of either the five-year period provided under Fla.Stat. § 95.11(2)(b) for actions based on contracts or written instruments, the four-year period for actions based on contract or agreement not in writing (§ 95.11(3)(k)), or the four-year period for statutory actions (§ 95.11(3)(f)). We agree with New York Life's assertion that we must borrow from the most closely analogous state limitations period for this action. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 354, 111 S.Ct. 2773, 2778, 115 L.Ed.2d 321 (1991) (where Congress provides no statute of limitations, federal courts are to borrow from the most closely analogous state law unless "a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking."). We find that the four-year limitations period for statutory actions, Fla.Stat. § 95.11(3)(f), applies to the Plaintiffs' claims for violation of the MSP statute, for breach of contract, and for declaratory relief.[9] With respect to the cause of action for breach of contract, we find that the statutory period should apply because the relief sought by the Plaintiffs is solely by operation of the MSP laws, rather than on the basis of any written provision of the insurance contracts at issue

---

[9]All of the parties agreed at oral argument before this Court that the claim for declaratory relief would carry the same limitations period as the primary claim under the MSP laws.

in this case. The Plaintiffs filed this action on February 28, 1995. Thus, any claims accruing before February 28, 1991, would be time-barred. For purposes of the MSP statute, we believe the statute of limitations on the Plaintiffs' claims begins to run on the date the health care services were provided.[10] Once services have been rendered, the primary insurer is liable to pay its portion of that claim. Therefore, the Plaintiffs would be entitled to pursue payment by way of the MSP statute as of that date. Accordingly, any of the Individual Plaintiffs' claims relating to services rendered prior to February 28, 1991, would be time-barred.

A four-year statute of limitations is also applicable to the Plaintiffs' RICO claims. *Agency Holding Corp. v. Malley-Duff & Assoc.,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). In *Bivens Gardens Office Bldg., Inc. v. Barnett Bank,* 906 F.2d 1546 (11th Cir.1990), *cert. denied,* 500 U.S. 910, 111 S.Ct. 1695, 114 L.Ed.2d 89 (1991), the Eleventh Circuit Court of Appeals established that a RICO claim accrues "as soon as the plaintiff discovers, or reasonably should have discovered, both the existence and source of his injury and that the injury is part of a pattern." *Id.* at 1554-55. The Amended Complaint in this case alleges predicate acts dating back to 1983. Although the Plaintiffs assert that they did not know of their injury or that it was part of a pattern until 1993, this argument addresses only the first prong of the *Bivens Gardens* analysis. We find that the Plaintiffs should have known both of their injuries and that they were part of an alleged pattern of racketeering activity before February 28, 1991. The Employer Plaintiffs[11] are directly regulated by the MSP statute. *See* 42 U.S.C. § 1395y(b)(3)(C). In addition, as the Amended Complaint alleges, the General Accounting Office ("GAO") issued reports to Congress estimating the number and amount of money paid by Medicare that should have been paid by private insurers at least as early as 1987. Am.Compl. ¶ 23. These employers should have known, after eight years of the MSP laws' effect—a law directly regulating their conduct—that they had sustained the alleged injuries and that their

---

[10]We note that no party has offered any theory of when the MSP claims would accrue for purposes of the statute of limitations.

[11]As noted *supra* Part III.B., the Individual Plaintiffs lack standing to maintain the RICO claims. Thus, our discussion of when the Plaintiffs knew or should have known of their injuries and that they were the result of a pattern of racketeering injury is limited to the Employer Plaintiffs.

alleged injuries were the result of a pattern of activity. Thus, could the Plaintiffs otherwise proceed with their claims, their cause of action for double damages under the MSP laws would be limited to claims for services rendered on or after February 28, 1991, and the Plaintiffs' RICO claims would be time-barred altogether.

E. *Failure to Plead Fraud With Particularity*

As we have noted, given the rulings on other issues in this case, *see supra* Parts III.A. & III.D, we need not reach the issue presented by the Defendants as to the sufficiency "of the Plaintiffs' RICO claims. Nonetheless, were the Plaintiffs' causes of action to survive the aforementioned bars, the Plaintiffs would be required to replead their RICO claims with the specificity required in Federal Rule of Civil Procedure 9(b). As noted above, under Rule 9(b), the Plaintiffs must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud. *Fitch v. Radnor Industries, Ltd.,* 1990 WL 150110 at *2. The Plaintiffs' RICO claims fall short of this standard. First, Plaintiffs have simply " "lumped together' " all of the Defendants in their allegations of fraud. *See Vicom, Inc. v. Harbridge Merchant Servs., Inc.,* 20 F.3d 771, 778 (7th Cir.1994). As the Seventh Circuit noted in *Vicom:*

> Because fair notice is "[p]erhaps the most basic consideration" underlying Rule 9(b), Wright & Miller, *supra,* § 1298, at 648, the plaintiff who pleads fraud must "reasonably notify the defendants of their purported role in the scheme." *Midwest Grinding [Co. v. Spitz],* 976 F.2d [1016, 1020 (7th Cir.1992) ]. Therefore, in a case involving multiple defendants ... "the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio [v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987) ]; *see also Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to "defendants.' "); *Balabanos v. North Am. Inv. Group, Ltd.,* 708 F.Supp. 1488, 1493 (N.D.Ill.1988) (stating that in cases involving multiple defendants "the complaint should inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant.").

20 F.3d at 777-78. The Amended Complaint is devoid of specific allegations with respect to the separate Defendants. Thus, the Amended Complaint is also subject to dismissal without prejudice for failure to plead fraud with the requisite specificity as to each of the Defendants under Rule 9(b). Similarly, the Amended Complaint fails to set forth the time, place, and manner in which any

specific predicate act occurred. Instead, the Plaintiffs allege as follows:

> The Group Health Insurance Defendants each, directly or indirectly, in combination or conspiracy with each other and with Blue Cross of Florida, engaged in a pattern of racketeering activities within the meaning of 18 U.S.C. § 1961(a)(B) or (D) and (5), involving the following predicate acts which have occurred during the last twelve years, since 1983:
>
> a. Mail fraud in violation of 18 U.S.C. § 1341 in that the Group Health Insurance Defendants together with and/or assisted by Blue Cross of Florida intentionally used the U.S. mails in furtherance of the scheme and transmitted group health plan information, claim forms, Medicare claims, claim reimbursements and Medicare payments, and otherwise conducted their business through the mails, including regular transmissions of communications containing or based upon the Group Health Insurance Defendants' false assertions with regard to the MSP statute, each mailing constituting a separate mail fraud violation; and
>
> b. Wire fraud in violation of 18 U.S.C. § 1343 in that the Group Health Insurance Defendants together with and/or assisted by Blue Cross of Florida intentionally engaged in telephone conversations or used wire transmissions in furtherance of the scheme, including transmittal of group health plan information, solicitation of coverage, payment of premiums or payment of secondary, rather than primary insurance coverage, and including regular communications concerning or based upon the Group Health Insurance Defendants' false assertions with regard to the MSP statute, each of which communications constitute [sic] a separate wire fraud violation.

Am.Compl. ¶ 47. These allegations provide no basis in fact upon which the Court could conclude that any specific act of any specific Defendants is indictable for mail or wire fraud. *See In re Cascade Int'l Secs. Litigation,* 840 F.Supp. 1558, 1582 (S.D.Fla.1993) ("To maintain a RICO action, at a minimum, the plaintiffs must allege sufficient facts with enough specificity to show probable cause that the predicate acts were committed.") (citing *Banco de Desarrollo Agropecuario, S.A. v. Gibbs,* 640 F.Supp. 1168, 1175 (S.D.Fla.1986)). Therefore, if the Plaintiffs' RICO claims were to survive summary judgATTACHMENT—Continued

ment as to the scope of the MSP laws and dismissal on statute of limitations grounds, they would nonetheless be subject to dismissal in their entirety for failure to plead fraud with particularity.[12]

F. *Sovereign Immunity*

Finally, had the Amended Complaint survived the numerous bases for granting summary judgment or dismissal in favor of the Defendants, *supra* Parts III.A., III.B., III.D, and III.E., we

---

[12]Given the present ruling on the Defendants' arguments regarding failure to plead fraud with particularity, we do not reach the Defendants' requests for more definite statement, for a RICO case statement in this action, or otherwise challenging the Plaintiffs' RICO allegations.

would not conclude that Defendant Blue Cross would be entitled to dismissal from this action on the basis of sovereign immunity. However, we would find that the Plaintiffs have failed to state a claim against Blue Cross in their claim for declaratory relief (Count III). As we have previously stated, Defendant Blue Cross stands in a different position in this case from that of the other Defendants. Blue Cross's liability in this action arises solely from its role as the claims administrator for the Medicare system, rather than as an insurer of any of the Plaintiffs. In addition, only Counts III-VII, seeking declaratory relief and damages for RICO violations, are asserted against Blue Cross. The Amended Complaint asserts the following with respect to Blue Cross:

> 7. Defendant Blue Cross and Blue Shield of Florida, Inc. ("Blue Cross of Florida") is, by contract, an administrator of Medicare Part A and Part B claims. Specifically, Blue Cross of Florida has entered into contractual relations with the United States Department of Health and Human Services, Health Care Finance Administration ("HCFA"), whereby Blue Cross of Florida is responsible for the processing and payment of both Part A and Part B Medicare claims. In its capacity as administrator for the HCFA, Blue Cross of Florida is responsible for the enforcement and protection of the HCFA's rights under 42 U.S.C. § 1395y(b)(2).

Am.Compl. ¶ 7. Beyond this statement, the Amended Complaint asserts in the RICO claims (Counts IV-VII) generally that activities were undertaken by the Group Health Insurance Defendants "with Blue Cross of Florida," *Id.* ¶ 47, "together with and/or assisted by Blue Cross of Florida," *Id.,* or similarly alleges Blue Cross's cooperation with the Insurer Defendants in these general terms. Blue Cross has moved to dismiss each of the Plaintiffs' claims against it on the basis of sovereign immunity.

The MSP laws plainly do not provide for any action against an administrator or "fiscal intermediary" that is not itself the insurer. *See Matranga v. Travelers Ins. Co.,* 563 F.2d 677, 677 (5th Cir.1977) (holding that in action seeking payment from Medicare for services rendered the Court lacks subject matter jurisdiction over fiscal intermediary under doctrine of sovereign immunity and the real party in interest is the United States); *see also Roberts v. Hay,* 1992 WL 206292, No. 92-AR-0212-M (N.D.Ala.1992) (sovereign immunity of fiscal intermediary established by binding precedent in this Circuit).

The Plaintiffs argue that Blue Cross is not entitled to sovereign immunity because the claims against it are based on actions exceeding Blue Cross's authority to act on the government's behalf.

To the extent that the Plaintiffs have pled injury as a result of Blue Cross's fraudulent conduct under the RICO laws, we agree. In *Livingston v. Blue Cross & Blue Shield,* 788 F.Supp. 545 (S.D.Ala.1992), *aff'd without op.,* 996 F.2d 314, *reh'g en banc denied,* 7 F.3d 242 (11th Cir.1993), the plaintiff brought an action against Blue Cross and Blue Shield of Alabama, which acted solely as the carrier or fiscal intermediary on behalf of HHS. The plaintiff, a medical services provider, had been investigated by the defendant for Medicare fraud. This investigation ultimately led to the plaintiff being charged with eight counts of Medicare fraud. However, the plaintiff was found not guilty as to all of the charges. The plaintiff then brought suit against Blue Cross and Blue Shield of Alabama alleging malicious prosecution. The District Court held, based on binding Former Fifth Circuit precedent, that Medicare fiscal intermediaries are entitled to sovereign immunity. *Id.* at 548 (citing *Matranga v. Travelers Ins. Co.,* 563 F.2d 677 (5th Cir.1977); *Peterson v. Weinberger,* 508 F.2d 45 (5th Cir.), *cert. denied,* 423 U.S. 830, 96 S.Ct. 50, 46 L.Ed.2d 47 (1975); *Peterson v. Blue Cross/Blue Shield of Texas,* 508 F.2d 55, 57-58 (5th Cir.), *cert. denied,* 422 U.S. 1043, 95 S.Ct. 2657, 45 L.Ed.2d 694 (1975)). However, the Court then explained the reason for this rule as follows:

> This Court does not read [the above-cited cases] to extend blanket immunity to Medicare fiscal intermediaries. Rather, a more logical interpretation is that the fiscal intermediary is entitled to sovereign immunity to the extent that the government is exposed to financial risk. Support for this interpretation can be found in *Anderson v. Occidental Life Ins. Co.,* 727 F.2d 855 (9th Cir.1984) in which the Ninth Circuit, relying on the *Peterson* cases and *Matranga,* held that a Medicare fiscal intermediary was immune from suit "because recovery would come from the federal treasury." *Id.* at 856. The court noted that the complaint did not allege "criminal, fraudulent or grossly negligent acts" which would exempt the government from its duty to indemnify the fiscal intermediary. *Id.* at 587.

*Id.* at 548. In the present case, however, the Plaintiffs' claims against Blue Cross seek damages against Blue Cross only in the RICO counts. These claims are plainly premised upon both criminal and fraudulent conduct. Thus, the government would not be required to indemnify Blue Cross for any recovery against it, eliminating the basis for sovereign immunity. Therefore, had the Plaintiffs' claims survived dismissal and summary judgment, *supra* Parts III.A., III.B., III.D., and III.E., Defendant Blue Cross would not be entitled to dismissal on the basis of sovereign immunity.

With respect to the Plaintiffs' claim for declaratory relief, however, the Plaintiffs have pled

no grounds for inclusion of Blue Cross in that claim. In fact, Blue Cross is mentioned only in the title of Count III, with no allegations whatsoever to tie Blue Cross to the claim. Thus, if the Plaintiffs' claims had otherwise survived dismissal and summary judgment, Count III of the Amended Complaint, seeking declaratory relief, would be dismissed for failure to state a claim against Defendant Blue Cross.

IV.

In sum, we find that all four Defendants—including both the Insurer Defendants and Blue Cross—are entitled to summary judgment as to every claim asserted in the Plaintiffs' Amended Complaint because the Insurer Defendants in this case sold no group insurance or plan of insurance within the meaning of the MSP statute. *See supra* Part III.A. Moreover, we conclude that the Individual Plaintiffs lack standing to maintain claims for breach of contract (Count II) and violations of the RICO statute (Counts IV-VII) because they have suffered no injury, and the Employer Plaintiffs lack standing to bring claims pursuant to the MSP statute (Count I) and for breach of contract (Count II). *See supra* Part III.B. We further determine that if the Plaintiffs' MSP cause of action had survived summary judgment, it would be limited to claims for services rendered on February 28, 1991, or later, and the RICO claims would be barred entirely by the statute of limitations. *See supra* Part III.D. We next hold that the Plaintiffs have failed to plead a RICO cause of action with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure. *See supra* Part III.E. Finally, we find that the Plaintiffs have failed to state a claim for declaratory relief (Count III) against Defendant Blue Cross. *See supra* Part III.F. Had the Plaintiffs' claims survived these challenges, however, Plaintiffs would not be required to exhaust administrative remedies, *see supra* Part III.C, and Defendant Blue Cross would not be entitled to rely upon the defense of sovereign immunity in this case. *See supra* Part III.F. Accordingly, it is hereby

ORDERED and ADJUDGED as follows:

1. Defendant Blue Cross's motion to dismiss the amended complaint (DE # 31) is GRANTED;

2. Defendant New York Life's motion for instructions and an Order directed to Plaintiff's

counsel (DE # 46) is DENIED AS MOOT;

3. Defendant New York Life's combined motion to dismiss and/or for summary judgment (DE # 47) is GRANTED;

4. Defendant New York Life's corrected motion for more definite statement and for RICO case statement (DE # 56) is DENIED AS MOOT;

5. Defendant First National's motion for summary judgment (DE # 93) is GRANTED;

6. Defendant First National's motion to dismiss (DE # 53) is DENIED AS MOOT;

7. Defendant United American's corrected motion to dismiss (DE # 67) is GRANTED;  and

8. Any other motions pending in this action at this time are DENIED AS MOOT.

9. The Defendants shall file a proposed Order of final summary judgment within ten (10) days of this Order.

DONE AND ORDERED in Miami, this 22nd day of September, 1995.

/s/ <u>Stanley Marcus</u>