LIGHTING FIXTURE AND ELECTRIC
SUPPLY CO. Inc., Plaintiff-Appellee,

v.

The CONTINENTAL INSURANCE CO.,
Defendant-Appellant,
and
Electric Supply Co. Inc., Defendant.

No. 27816.

United States Court of Appeals
Fifth Circuit.

Dec. 10, 1969.

William A. Gillen, George C. Winn, Fowler, White, Collins, Gillen, Humkey & Trenam, Tampa, Fla., for appellant.

John H. Mount, Don M. Stichter, Bucklew, Ramsey & Stichter, Tampa, Fla., for appellee.

Before WISDOM, GEWIN and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge.

Lighting Fixture and Electric Supply Company commenced this Florida-based diversity action against The Continental Insurance Company to enforce the latter's alleged liability to it under a "special multi-peril" policy the insurer had issued to Electric Supply Company and Electric Supply of Clearwater, Inc., as named insureds.[1] Included within the coverage of this policy was a building owned by Lighting Fixture. In June 1966 this building, located in Tampa, Florida, was severely damaged by fire. Lighting Fixture thereafter duly filed with Continental a proof of loss, but Continental disclaimed liability on the ground that Lighting Fixture was not named in any capacity in the policy covering the Tampa building. Agreeing with the District Court that this fact was not fatal to plaintiff's claim under the circumstances here and that summary disposition of this case was appropriate, we affirm the judgment granted summarily in part[2] in favor of Lighting Fixture.

In September 1965 Lighting Fixture purchased the Tampa building from Electric Supply, in whose name the building was then insured against fire loss and damage. Lighting Fixture then leased the building back to Electric Supply. The lease agreement provided, among other things, that Electric Supply would obtain policies insuring the premises against fire loss and damage with Lighting Fixture named as a beneficiary. At about this time Continental's general agent in Tampa contacted Electric Supply in regard to a possible review of the latter's insurance needs. William C. Crowder, an officer of Continental's agent, made this contact on the advice of a business acquaintance. Continental had not previously provided insurance to Electric Supply, but Crowder had heard from yet another source that Electric Supply had been recently sold. Subsequently, in December 1965, Continental issued to Electric Supply a package policy insuring, among other things, the Tampa building and Electric Supply's property contained there. The application for the policy was prepared by Crowder, who made use of some of Electric Supply's old policies to obtain information that he required to write the package policy. The application was signed on behalf of Electric Supply by its comptroller. In this application and the issued policy, Electric Supply and Electric Supply of Clearwater were the named insureds. Electric Supply was described as the owner of the Tampa building, and a Martin Trent was named as the mortgagee of the building and loss payee.

---

1. Originally both Continental and Electric Supply were named as defendants to this action. Lighting Fixture withdrew its claim against Electric Supply in its second amended complaint.

2. Fed.R.Civ.P. 56(c), *as amended*, in part provides that " * * * A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

After the building burned, Electric Supply filed a claim with Continental solely for the loss of the building's contents. Continental satisfied this claim and secured a release from Electric Supply. The insurer also paid Trent in satisfaction of the mortgagee's claim based upon the fire damage to the building, but refused to pay any amount to Lighting Fixture.

In the District Court Lighting Fixture sought a judgment reforming the policy to reflect plaintiff as a named insurer or loss payee. Alternatively, it based its claim against Continental on the grounds that (1) it was the undisclosed principal of Electric Supply, which had contracted with Continental for insurance covering the Tampa building on its behalf, (2) it was a third-party beneficiary to the insurance contract made by Electric Supply and Continental, and (3) Continental had waived objection to its claim and was estopped from denying liability.

On a record comprised of a stipulation of facts, pleadings, admissions, and various exhibits and depositions, each party moved for a summary judgment on the issue of Continental's liability to Lighting Fixture. In response the District Court found that there was "* * * no genuine issue as to any material fact on the question of liability and that the insurance policy involved herein should be reformed to reflect plaintiff's ownership of the real property which is the subject matter of this case." Accordingly, "[f]or this reason, and other reasons advanced by plaintiff in its memoranda," the District Court granted Lighting Fixture's motion and denied Continental's motion. From these actions the insurer appeals, contending that it, rather than Lighting Fixture, was entitled to a summary disposition of this case in its favor.

In this diversity case we must decide the propriety of the partial summary judgment granted below in accordance with the federal standards fixed in Rule 56(c), Fed.R.Civ.P. 56(c), *as amended.* Rule 56(c) provides that a summary judgment may be granted only when the record shows that "* * * there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * *" This principle is the corollary to the rule of this Court that the sufficiency of evidence to require jury submission in diversity cases is a question of federal law. Keating v. Jones Development of Missouri, Inc., 5 Cir. 1968, 389 F.2d 1011, 1013; *see* Falcon v. Auto Buses Internacionales, 5 Cir., 1969, 418 F.2d 673; Boeing Company v. Shipman, 5 Cir., 1969, 411 F.2d 365 (en banc). To be sure, in proceedings on motions for summary judgment questions of state law will arise in determining the materiality of particular facts to the claims and defenses of the parties and the factual elements required to establish the claims or defenses of the moving party, *e. g.,* Freeman v. Continental Gin Company, 5 Cir., 1967, 381 F.2d 459, *rehearing denied,* 384 F.2d 365, but whether a trial is necessary is a matter of federal law.

On a motion for summary judgment, the trial court must determine whether a genuine issue of material fact exists rather than how that issue should be resolved. "Summary Judgment should only be granted," this Court has stated, "when it is clear what the truth is and where no genuine issue remains for trial." United States v. Burket, 5 Cir., 1968, 402 F.2d 426, 430. A summary judgment may be improper even though the basic facts are undisputed if the parties disagree regarding the material factual inferences that properly may be drawn from these facts. *See, e. g.,* N.L.R.B. v. Smith Industries, Inc., 5 Cir., 1968, 403 F.2d 889, 893; Keating v. Jones Development of Missouri, Inc., 5 Cir., 1968, 398 F.2d 1011, 1013.

Applying these principles to this case, we determine that the District Court properly granted a partial summary judgment in favor of Lighting Fixture on the issue of Continental's liability. No material factual issues remained to

be tried, and Lighting Fixture was entitled to a judgment as a matter of Florida law.

■ Under Florida law an insurance contract may be reformed to correct a mutual mistake made by the parties in preparing that contract. *E. g.,* Manhattan Fire and Marine Ins. Co. v. Sommers, 222 So.2d 450 (Fla.Dist.Ct. App.1969); *cf.* Freitag v. Simon, 171 So.2d 918, 921 (Fla.Dist.Ct.App.1965). That a wrong name is unintentionally or mistakenly inserted in a policy does not provide the insurer with sufficient grounds for avoiding the policy, and reformation for mutual mistake may be obtained when the policy as written does not insure the person or interest intended to be insured. Royal Ins. Co. v. Smith, 158 Fla. 472, 29 So.2d 244, 246 (1947).

■ The record in this case shows clearly that the parties intended to insure the interest in the Tampa building of the owner of that building. · The insurance contract prepared by Continental was, among other things, a contract to insure against fire loss. As such it was not a contract of indemnity under which recovery could not be had if no pecuniary loss was sustained by the particular person in reference to whom the contract was made. Instead, it was a contract to pay for damage caused by fire to the building. *See, e. g.,* Springfield Fire and Marine Ins. Co. v. Boswell, 167 So.2d 780, 782 (Fla.Dist.Ct. App.1964). It is conceded that Continental would have provided the same coverage on the building at the same rate if it had had actual knowledge that Lighting Fixture, rather than Electric Supply, owned the building, although its procedures would have required the issuance of two policies rather than one to cover both the building and its contents. Under these circumstances we believe that a Florida court would conclude that the description in the policy of Electric Supply as the owner of the building and the person insured was a mistake on the part of Continental and Electric Supply

which entitles Lighting Fixture to a reformation of the policy under Florida law. *See* Manhattan Fire and Marine Ins. Co. v. Sommers, 222 So.2d 450, 453 (Fla.Dist.Ct.App.1969). Reformation could be had in a Florida court if it were clear that Continental had actual knowledge that Lighting Fixture or some other person rather than Electric Supply owned the building. *See* Taylor v. Glens Falls Ins. Co., 44 Fla. 273, 32 So. 887 (1902). Reformation could also be required if it were clear that the actions of Continental's agent amounted to an "independent investigation" under Florida law. In this situation the "general proposition that the insurer is charged with all knowledge that it *might* have obtained had it pursued the independent inquiry to the end with reasonable diligence and completeness" would apply, Fecht v. Makowski, 172 So.2d 468, 471 (Fla.Dist.Ct.App.1965) (emphasis in the original), and knowledge of Lighting Fixture's interest in the building would be imputable to Continental. *See* Columbian Nat. Life Ins. Co. v. Lanigan, 154 Fla. 760, 19 So.2d 67 (1944). It seems immaterial under the circumstances here whether the insurer either knew or should have known of Lighting Fixture's interest in the building. Florida has differentiated contracts of insurance from other types of contracts, and its policy of discouraging the contesting of insurance contracts by insurers and of otherwise protecting the interests of those who deal with insurance companies has been made clear. *E. g.,* Fla.Stat.Ann. § 627.0127, *as amended* (Supp.1969); *see* Old Republic Insurance Co. v. Monsees, 188 So.2d 893 (Fla. Dist.Ct.App.1966). *See also* Celanese Coatings Co. v. American Motorists Insurance Co., S.D.Fla., 1969, 297 F.Supp. 598, 600. In view of this policy, we believe that when an insurer and its customer agree that the insurer is to insure the owner of specified property against fire loss, it would be no less unconscionable to allow the insurer to avoid its obligations under their contract because the owner, whose identity is of no particular

concern to the insurer, is incorrectly named in that contract than to allow such avoidance because the insurer in preparing the policy acted unmindful of facts it either knew or should have known.

Although we conclude that the District Court was correct in reforming the policy to reflect Lighting Fixture as a named insured or loss payee with respect to the Tampa building, we trudge no further through the glades of Florida law than is necessary for the disposition of this case. Accordingly, we hold only that Lighting Fixture, as the undisclosed principal of Electric Supply, was entitled under the contract made on its behalf to receive payment from Continental. We have considered and rejected Continental's contentions in this regard as follows.

█ Continental first contends that the record provides no support for the proposition that an agency relationship existed between Lighting Fixture and Electric Supply. This contention is unsound. The lease agreement executed by Lighting Fixture and Electric Supply in part provided that

"* * * The lessee [Electric Supply] shall keep all buildings and structures located upon the demised premises constantly insured against all loss or damage by fire * * * in such company or companies acceptable to the lessor [Lighting Fixture]. All said policies and renewals thereof shall contain standard loss-payee clauses naming lessor as a beneficiary under said policies as its interest may appear. * * *"

This provision conclusively shows that Electric Supply was the agent of Lighting Fixture for the special purpose of obtaining insurance on the Tampa building. At least insofar as Lighting Fixture had to comply with the applicable terms of any policy Electric Supply might obtain in order to recover proceeds under that policy, the lease gave Electric Supply the power to bind Lighting Fixture. Such power is the badge of an agent. That Electric Supply did

not comply with all the terms of the agency in no way affects under the circumstances here the rights of Lighting Fixture against Continental.

█ Assuming the existence of an agency relationship, Continental next contends that Lighting Fixture cannot sue on the insurance contract because Continental made this contract exclusively with Electric Supply. This contention is also unsound. In Florida an undisclosed principal may sue upon a contract made by its agent. E. O. Painter Fertilizer Co. v. Dupont, 56 Fla. 511, 47 So. 928 (1908); Arnold Altex Aluminum Company v. Sire Plan, Inc., 149 So.2d 79 (Fla.Dist.Ct.App.1963). *See generally* 1 Fla.Jur. Agency § 92 (1955). The Florida courts have not had occasion to formulate any exceptions to this rule which are relevant to this case. We believe that a Florida court would adhere to the rule obtaining elsewhere that a third party is not liable to an undisclosed principal if the contract he made with the principal's agent expressly or necessarily by implication excluded liability to any undisclosed principal or to the particular undisclosed principal, e. g., Arnold's of Mississippi, Inc. v. Clancy, 251 Miss. 613, 171 So.2d 152 (1965); see Restatement (Second) of Agency § 303 (1958), and may rescind such a contract "* * * if he was induced to enter into it by a representation that the agent was not acting *for a principal and if*, as the agent or principal had notice, he would not have dealt with the principal." Restatement (Second) of Agency § 304 (1958). *See generally* Annot., 130 A.L.R. 664, 669-81 (1941). A reading of the cases convinces us, however, that these exceptions to the general rule are not applicable under the circumstances here.

The facts show that it was of no particular concern to Continental whether Electric Supply or some other person owned the building occupied by Electric Supply. That Electric Supply was described as the owner of the building signified that the interest being

insured in the building was that of its owner, and the premiums payable to the insurer were calculated on this basis. We do not attach to this description the further meaning that all persons other than Electric Supply were thereby excluded as contracting parties. Accordingly, Lighting Fixture was entitled to recover the proceeds payable under the policy as a result of the fire.[3]

Affirmed.

---

**3.** Since we have concluded that a partial summary judgment was properly granted in favor of Lighting Fixture on the ground that it was the undisclosed principal of Electric Supply, we need not reach the questions whether it was also entitled to recovery on its third-party beneficiary theory and whether Continental had waived objections to its claim and was estopped from denying liability.