The **DORAN JASON COMPANY OF MIAMI, INC.**, Plaintiff,

v.

**Nils LOU, Attorney-in-Fact for Ian Paget–Brown, et al.**, Defendants.

No. 86–0177–CIV.

United States District Court, S.D. Florida.

April 28, 1987.

Gary S. Brooks, Sandra J. Babey–Whitman, Fine Jacobson Schwartz, Nash Block & England, Miami, Fla., for plaintiff.

Ted H. Bartelstone, Hollander, Schiffrin & Bartelstone, Miami, Fla., for defendants.

## ORDER

MARCUS, District Judge.

THIS CAUSE has come before the Court upon Defendants' Motion for Rehearing of Order on Summary Judgment or, in the Alternative, to Alter or Amend Judgment, which was filed with the Court on January 6, 1987. In its motion, Defendants allege that they are entitled to summary judgment on Count I of Plaintiff's Amended Complaint on the following newly raised grounds: (1) Plaintiff did not find a purchaser for the property during the term of the listing agreement; (2) Plaintiff did not register the purchaser of the property in writing with Defendant Ramma, N.V. during the term of the listing agreement. Plaintiff has responded to this motion, Defendants have replied, and on January 16, 1987 this Court took oral argument on this motion. At that time we gave Plaintiff an opportunity to submit a supplemental memorandum, which has been received and reviewed by the Court. Based on a review of all the relevant memoranda, we conclude that Defendants' motion for summary judgment must be granted. We find that Plaintiff's failure to actually procure a purchaser during the term of the listing agreement or to register the name of Southeast Bank, the ultimate purchaser, with Ramma, N.V. during the term of the listing agreement is fatal to Plaintiff's contract action.

### I.

On March 14, 1984, Plaintiff Doran Jason Company of Miami, Inc. ("Doran Jason"), as real estate broker, entered into a Listing Agreement with Ian Paget-Brown and Betty Baraud, Trustees (The "Trustees") with regard to a 12.63 acre parcel of land described as Tract "A" of Flightway Park less the south 111 feet. Plat Book 119, Page 63, Section 27, Township 53 South, Range 40 East, Dade County, Florida (the "Flightway Property"). The Agreement provided that the Trustees would give Doran Jason "the exclusive right and authority to find a purchaser for said property at the following price and terms, or at any other price and terms acceptable to the undersigned" for a period of six months from the date of the agreement. The Agreement further provided as follows:

3. For finding a purchaser for the above property:

A. The undersigned jointly and severally agrees to pay you a commission of ten per cent of the sale price for said property.

B. Said commission is to be paid you whether the purchaser is found by you or by the undersigned or by any other person at the price and upon the terms set forth above or at any price or terms acceptable to the undersigned; or if the undersigned agrees to sell said property within three months next after the termination of this agency to a purchaser to whom you or any cooperating broker submitted said property for sale during the continuance of said agency.

C. In any exchange of this property, permission is given you to represent and receive commissions from both parties.

Finally, pursuant to Addendum "A" to the Agreement, Paragraph 3B was modified as follows:

4. Add to paragraph 3B the following: "Provided the purchaser's name was registered by you in writing with the undersigned during the continuance of said agency."

The exclusive listing period expired on September 15, 1984 and the three-month period for a sale to a registered client expired on December 15, 1984.

On June 11, 1985, a sales contract was executed with Southeast Bank ("Southeast") on the Flightway property for $2,740,000. The contract closed on August 7, 1985. The contract stated that no bro-

kers were involved in the transaction, and no brokerage commission was paid.

Plaintiff claims that it procured Southeast as a buyer for the Flightway property, and that based on the Listing Agreement (Count I), it is entitled to a commission on the sale. Defendants claim that the first contact between Plaintiff and Southeast was in January 1985, more than three months after the expiration of the Listing Agreement, and therefore that Plaintiff is not entitled to a commission on the sale. Defendants further claim in their reply memorandum that even if Plaintiff "found" Southeast within the period of the Listing Agreement, that it did not register Southeast's name with Defendant Ramma, N.V. as required by the addendum to the Listing Agreement, and therefore, Plaintiff is not entitled to a commission. In its supplemental memo, Plaintiff responds that although it did not register Southeast with Ramma, N.V., that registration was not required because Plaintiff "*found* the ultimate purchaser *during* the initial six month period."

Defendants have now moved for summary judgment on Count I of the Amended Complaint (the Listing Agreement), stating that there are no material facts in dispute and that they are entitled to judgment as a matter of law. Although we believe that there are facts in dispute, we find it unnecessary to reach them in order to resolve Defendants' motion.

## II.

The standard to be applied in reviewing a summary judgment motion is stated unambiguously in Rule 56(c) of the Federal Rules of Civil Procedure:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

It may be entered only where there is *no* genuine issue of material fact. Moreover, the moving party has the burden of meeting this exacting standard. *Adickes v.* *S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

In applying this standard, the Eleventh Circuit recently explained:

In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608; [*Environmental Defense Fund v.*] *Marsh,* 651 F.2d [983] at 991 [5th Cir.1981]. All reasonable doubts about the facts should be resolved in favor of the non-movant. *Casey Enterprises v. Am. Hardware Mutual Ins. Co.*, 655 F.2d 598, 602 (5th Cir.1981). If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Marsh,* 651 F.2d at 991; *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir.1969). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co.,* 420 F.2d at 1213. If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Impossible Electronics* [*v. Wackenhut Protective Systems*], 669 F.2d [1026] at 1031 [5th Cir.1982]; *Croley v. Matson Navigation Co.*, 434 F.2d 73, 75 (5th Cir.1970).

Moreover, the party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. at 160, 90 S.Ct. at 1609–10; *Marsh,* 651 F.2d at 991. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg,* 370 F.2d 605, 611–12 (5th Cir.1967). *See*

*Dalke v. Upjohn Co.*, 555 F.2d 245, 248–49 (9th Cir.1977).

*Clemons v. Dougherty County, Ga.*, 684 F.2d 1365, 1368–69 (11th Cir.1982); *see also Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1502 (11th Cir.1985).

### III.

It is clear to us that Defendants' motion turns on the meaning of "finding a purchaser" for purposes of the Listing Agreement. For if contacting the ultimate purchaser during the exclusive listing period is enough to be said to have *found the purchaser*, it is clear that there are facts in dispute as to these alleged contacts which would preclude summary judgment. On the other hand, if finding a purchaser means actually obtaining a sales contract or some similar agreement, then it is undisputed that Plaintiff did not find a purchaser within the exclusive listing period or in the three months thereafter.

Plaintiff claims that the former meaning is the correct one to give to the phrase "find a purchaser" based on *Sheldon Greene & Associates, Inc. v. Rosinda Investments, N.V.*, 475 So.2d 925 (Fla. 3d DCA 1985), which was cited by this Court in its Order of December 22, 1986. In *Sheldon Greene*, the court stated that for a broker to be considered the "procuring cause" of a sale he must only have brought the parties together in order to be entitled to a commission. *Id.* at 927. There is no evidence in *Sheldon Greene*, however, that a written listing agreement formed the basis of this rule. Rather, it appears that the *Sheldon Greene* court reached this decision based on an informal understanding between the parties, such as an oral agreement. Thus, although we believe that *Sheldon Greene* supports Plaintiff's cause of action on an oral agreement, we do not believe it provides any support for Plaintiff's Listing Agreement argument. It is clear from the portions of the Agreement cited earlier that the parties attempted to define in the Listing Agreement precisely when and under what circumstances Plaintiff would be eligible to receive a commis-

sion. We cannot ignore this language and turn to the general common law of this state when evaluating the meaning of a written contract. Thus, we reject Plaintiff's first argument.

▆ Furthermore, a review of the contractual language itself leads us to find that the only internally consistent meaning for the phrase "find a purchaser" is that it requires an actual sales contract to have been executed or similar type of agreement to have been reached. In reaching this conclusion we refer to paragraph 3B of the Listing Agreement. This paragraph indicates that a commission would be due to Plaintiff (1) if anyone found a purchaser for the subject property within the six-month exclusive listing period or, (2) if the owner agreed to sell the property within three months after the six-month period had terminated to a purchaser whom Plaintiff had procured. If we were to construe "finding a purchaser" to mean contacting the ultimate buyer, then the second portion of paragraph 3B would have no meaning because any purchaser that the owner sold the property to within the three-month period would have to have been contacted or "found" during the six-month period. Thus, based on this construction of the phrase "finding a purchaser," Plaintiff would always be entitled to a commission by virtue of the first phrase in paragraph 3B. We cannot believe that the parties would have allowed the second half of paragraph 3B to remain in the contract as mere surplusage considering that they also modified this paragraph by the addition of Addendum "A."

Additionally, we note that this apparently ambiguous language is contained in a contract drafted by Plaintiff. Thus, we shall construe the provision against the drafter. Viewing the provision in this light and considering the intent of the parties at the time of contracting, we find that the words "find a purchaser" must be construed as obtaining a sales contract or similar agreement, not merely contacting the ultimate purchaser of the property.[1]

---

1. Although it is undisputed that the sales con-  tract with Southeast was not executed within

Even accepting this construction of the contract, Plaintiff next argues that Defendants failed to rely upon the registration provision contained in Addendum "A," and therefore, that it should not be enforced. In support of this argument that reliance is required, Plaintiff cites *Dade County v. O.K. Auto Parts of Miami, Inc.,* 360 So.2d 441 (Fla. 3d DCA 1978). *Dade County* involved a contract between a county and a towing company for the removal of abandoned cars. The contract contained a provision which guaranteed the towing company a minimum number of abandoned vehicles per day. The contract also stated that to prevent litigation, all disputes regarding the interpretation of the contract were to be brought to the Director for resolution. Not until the county filed suit on the contract did the towing company evince any indication that it felt the guarantee clause had been breached. In analyzing the guarantee provision, the court found it to be internally inconsistent and in contradiction with other elements of the contract and the intent of both parties at the time of contracting and throughout the course of performance. The court found that the guarantee provision was a remnant from the days when the county had paid towing companies to remove abandoned vehicles, rather than towing companies paying the county (due to the scrap metal value of the vehicles), as was then the case. Thus, the court found that although the guarantee was valid, it was impliedly conditioned on the towing company's payment of $11.00 per vehicle to the county, a condition which was ignored by the towing company. Accordingly, the court found that the towing company was estopped by its own recalcitrance from *relying* on the county's guarantee.

■ We fail to see any application of *Dade County* to the instant case. Here, there is no indication that Ramma, N.V. ignored breaches by Plaintiff during the term of the Listing Agreement. There is also no indication that the provision in dispute was the remnant of an old contract, or that it was contrary to the parties' intent. Additionally, although payment to the county could be considered a condition to enforcement of the guarantee, payment of a commission cannot be considered a condition to registration of a purchaser's name. Indeed, the reverse is true. Payment of a commission is explicitly conditioned on registration of the purchaser's name. Neither do we believe, as Plaintiff has alleged, that Defendants need to show that they were prejudiced by or relied upon the failure of Plaintiff to register the ultimate purchaser. Defendants do not have to show either of these elements in order to enforce their contractual rights.

■ Finally, Plaintiff argues that the registration provision should not be enforced because it is immaterial, or at least that factual disputes exist with respect to the provision's materiality. Plaintiff cites 11 Fla.Jur.2d, *Contracts* § 172 at 479 (1979) for the proposition that only a *material* breach or nonperformance by one party gives the other party the right to rescind the contract. Plaintiff, however, misapprehends the nature of this contract. This contract is a unilateral contract; payment by Defendants was not due until Plaintiff performed according to the terms of the contract. By failing to register Southeast with Defendants, Plaintiff did not breach the Listing Agreement, it just did not meet one of the conditions which would have entitled it to a commission.

■ Furthermore, even assuming that materiality is required in order for Defendants to prevail—and we do not believe that it is—we find that the registration requirement is material. Undoubtedly disputes arise in this area when a sale occurs shortly after an exclusive listing agreement expires. Surely brokers claim that they procured the eventual purchaser and owners claim that the purchaser was procured

the six-month exclusive listing period or the three month extension for registered contacts, arguably Defendants "agreed to sell" the Flightway property to Southeast during one of these time periods. Accordingly, we shall construe

the facts in a light most favorable to Plaintiff, as we must when evaluating Defendants' motion for summary judgment, and continue to analyze Plaintiff's other claims.

without the broker's assistance.. A provision such as this registration requirement undoubtedly resolves many of these disputes without litigation, which is certainly important to both broker and owner. By requiring registration, it becomes patently clear whether a broker is entitled to a commission or not. Consequently, we find that the instant registration requirement is material and enforceable. We further find that because Plaintiff undisputably did not comply with this provision that it did not meet one of the conditions necessary to become entitled to a commission pursuant to the Listing Agreement.[2] Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendants' Motion for Rehearing of Order on Summary Judgment or, in the Alternative, to Alter or Amend Judgment, is GRANTED. Specifically, we grant Defendants' Motion for Summary Judgment on Count I of the Amended Complaint.

---

**2.** Our finding that Plaintiff cannot recover on the Listing Agreement should in no way be construed to mean that Plaintiff may not be entitled to a commission on this sale pursuant to some other legal theory.