Miguel **ROZENBLUM**, Plaintiff,

v.

**OCEAN BEACH PROPERTIES**, d/b/a **Parisian Hotel Apartments, and Jay Cohen, Defendants.**

No. 05–21764–CIV.

United States District Court, S.D. Florida.

June 30, 2006.

Gary Andrew Costales, Miami, FL, for Plaintiff.

Chris Kleppin, Lloyd Scott Glasser, Harry O. Boreth, Glasser Boreth Ceasar & Kleppin, Plantation, FL, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

UNGARO–BENAGES, District Judge.

THIS CAUSE is before the Court upon Defendants' Motion for Summary Judgment, filed February 10, 2006. (DE 57.) Plaintiff filed its response on February 28, 2006 to which Defendants replied on March 7, 2006. Also before the Court is Plaintiff's Motion for Partial Summary Judgment, filed February 10, 2006. (DE 55.) Defendants filed their response on March 7, 2006 to which Plaintiff replied on March 17, 2006. The matters are ripe for disposition.

THE COURT has considered the motions and the pertinent portions of the record and is otherwise fully advised in the premises.

### FACTS

The Court recites the following facts taken from the record and viewed in the light most favorable to Plaintiff. Defendants own and operate the Parisian Hotel on Miami Beach, Florida. (Compl. ¶ 7; Ans. ¶ 7.) Defendant Jay Cohen is the individual owner of the Parisian. *Id.* From January 2002 to January 2005, Plaintiff worked for Defendants at the Parisian Hotel. (Rozenblum Dep. at 7.) Cohen was introduced to Plaintiff by Andy Ines, the owner a computer software company where Cohen purchased a computer system for the Parisian. (Cohen Dep. at 69–70.) Cohen hired Plaintiff, in part, because of his knowledge with the computer system and software that Cohen purchased. (Cohen Dep. at 69.)

Plaintiff always worked the overnight shift, from 12:00 a.m. to 8:00 a.m. and, other than a maintenance man on call at the hotel, Plaintiff worked alone during the majority of his shifts. *Id.* at 86; (Herold Dep. at 28.) Plaintiff also interacted with the hotel's maids near the end of his shift each morning. (Rozenblum Dep. at 156–57.) During the first year of his employment, Plaintiff was supervised by Luis Guerrero, the Parisian's front office manager. (Guerrero Dep. at 13–14.) After January 2003, Plaintiff's only supervision came from Defendant Cohen who would call the hotel nightly and come to the hotel in person approximately one to two times per week. (Rozenblum Dep. at 31–32.) Cohen often asked Plaintiff if there were any problems or complaints that Cohen should be made aware of and if the computer system was running properly. (Cohen Dep. at 45.)

Plaintiff's position was referred to by some as a night auditor and by others as a

night manager. *Id.* at 121–22; (Guerrero Dep. at 13–14); (Herold Dep. at 28–29); (Cohen Dep. at 21.) Plaintiff had several duties while working for the Parisian, all of which remained the same during his three years of employment. (Cohen Dep. at 22.) During the majority of his shift, Plaintiff performed a number of auditing duties. (Herold Dep. at 29.) For example, each night Plaintiff reviewed the information in the hotel's occupancy log to verify whether each customer had paid for their room and whether the previous shift's clerk properly collected payment. (Rozenblum Dep. at 39.); (Cohen Dep. at 22.) Plaintiff would then login to the hotel's computer system and print out, among other things, the room status reports, credit card charges and telephone bills from each room. *Id.* Plaintiff would compare, and correct if necessary, the charges incurred by customers with the amount paid. (Rozenblum Dep. at 131.) Plaintiff also charged those customers who failed to show up for their reservation. *Id.* at 133. Next, Plaintiff would review the credit card vouchers and compare them with the lists generated from the credit card machine. *Id.* Plaintiff again corrected any errors from the previous shift, reconciled any differences and then transferred the batch to the bank via the credit card machine. *Id.* at 134. If Plaintiff found mistakes made by the prior shifts, he informed the specific employee and trained them on the proper procedure. *Id.* at 39. Plaintiff would also inform Cohen about employee mistakes and ask him to address specific issues. *Id.* at 66.

Additionally, Plaintiff had a responsibility to rent rooms, although the majority of rooms were rented during the daytime shifts. (Rozenblum Dep. at 28.) If Plaintiff rented a room, he collected payment from the customer and provided the customer with their accommodations. *Id.* To avoid losing a sale, Plaintiff, as well as the front desk clerks who worked during the day shift, had the discretion to lower rates within the guidelines set by Cohen. *Id.*; (Guerrero Dep. at 16.) Plaintiff was also responsible for checking the hotel's parking lot to determine if each guest had paid for their parking spot and to report any unauthorized vehicles that needed to be towed. (Rozenblum Dep. at 28, 136.) Throughout the night, Plaintiff informed the maintenance man about repair problems or guest requests. (Rozenblum Dep. at 86–87.); (Herold Dep. at 11–14.) Plaintiff handled all the customer complaints during his shift, and if necessary, had the authority to change a guest's room in response to complaints. (Rozenblum Dep. at 84.) Other front desk clerks could only do this after receiving approval from Cohen. (Cohen Dep. 70.) Near the conclusion of each shift, Plaintiff provided the morning maid with a room status report so they were aware of which rooms where occupied and which needed to be cleaned. (Rozenblum Dep. at 137–38.) Plaintiff also prepared coffee for the guests, ordered and paid for the morning pastries, and occasionally assisted the maids in setting up for the continental breakfast. *Id.* at 157.

Because of his familiarity with the hotel's computer system, Plaintiff trained new employees to operate the system. *Id.* at 59. He trained them how to post payments in the system and how to make corrections if needed. *Id.* Plaintiff never set the schedule for any of the employees at the Parisian. *Id.* at 129. Plaintiff never hired or fired an employee nor did Plaintiff have the authority to hire or fire any employee.[1] (Rozenblum Dep. at 64–

---

1. Cohen testified that Plaintiff had the authority to hire and fire employees, although Cohen was unable to recall the name of any individual that Plaintiff hired or fired. (Cohen Dep. at 16.)

66.); (Guerrero Dep. at 18–19.) Although Plaintiff often complained to Cohen about the performance of certain employees, he never specifically recommended to Cohen that an employee should be hired, fired, or receive a raise. *Id.* However, he did report to Cohen about performance problems with employees and recommended that Cohen address these issues. (Rozenblum Dep. at 64–66.) Cohen set the pay rates for all the employees and was responsible for hiring and firing all employees. *Id.* According to Cohen, Plaintiff was "the captain of the ship" when Cohen was not at the hotel. (Cohen Dep. at 29.) He expected Plaintiff to handle problems as they arose and make the appropriate decisions to solve them. *Id.* at 69.

Defendants paid Plaintiff as a salaried employee. (Rozenblum Dep. at 70.) Plaintiff worked six days a week in 2002 and was paid $500 per week. *Id.* at 72. In 2003, Plaintiff received a raise to $550 per week. *Id.* at 73. Then, in 2004, Plaintiff's salary dropped to $459 because Plaintiff began working only five days per week. *Id.* at 73–74. Defendants paid the other desk clerks between $7.00 to $10.00 per hour. (Guerrero Dep. at 34–35.) Plaintiff worked approximately 48 hours per week during his employment with Defendants and claims he is entitled to overtime for the hours worked over 40. (Rozenblum Dep. at 79.)

### LEGAL STANDARD

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. The Supreme Court explained in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), that when assessing whether the movant has met this burden, the court should view the evidence and all factual inferences in the light most favorable to the party opposing the motion.

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir.1997); *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Envntl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir.1981).[2] Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the inferences arising from undisputed facts then the court should deny summary judgment. *Impossible Electronic Techniques, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026, 1031 (5th Cir.1982); *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

**2.** Decisions of the United States Court of Appeals for the Fifth Circuit entered before October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981).

242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[T]he dispute about a material fact is 'genuine,' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes,* 398 U.S. at 160, 90 S.Ct. 1598. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg,* 370 F.2d 605, 611–12 (5th Cir.1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. 2505.

### ANALYSIS

#### Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves the Court to grant summary judgment in his favor on Defendants' defense that Plaintiff comes within the "sole-charge" exception to the executive exemption under 29 U.S.C. § 213(a)(1) and its implementing regulation 29 C.F.R. § 541.113 (2004). Specifically, Plaintiff argues that: (1) Defendants failed to specifically raise the defense in their Answer and did not raise it until filing their supplemental interrogatory responses after the close of discovery and therefore should be prevented from raising the defense; (2) Defendants are prohibited from claiming the sole-charge exception for Plaintiff's claims arising after August 23, 2004; and (3) even if Defendants are permitted to raise the defense, there is no genuine issue of material fact that the defense should not apply.

The Court will address each of Plaintiff's arguments in turn.

Federal Rule of Civil Procedure 8(b) provides that "[a] party shall state in short and plain terms the party's defenses to each claim asserted." Rule 8(c) states, in pertinent part, "[i]n a pleading to a preceding pleading, a party shall set forth affirmatively, [in addition to the enumerated defenses], any other matter constituting an avoidance or affirmative defense." In their Amended Answer, Defendants listed their second affirmative defense as follows:

> Plaintiff is an exempt employee, as contemplated by the FLSA, 29 U.S.C. § 213 (and the regulations promulgated thereunder), which exempts certain employees from the FLSA, including those employees who were hired upon intention of the parties as managers.

Additionally, Defendants stated as their eleventh affirmative defense, "[w]hether Plaintiff's claims are barred, in whole or in part, by the by the exemptions, exclusions, exceptions, and credits provided by the FLSA, 29 U.S.C. § 207." (Am. Ans. at 4.)

▮ Contrary to Plaintiff's contention, the Court finds that Defendants' second and eleventh affirmative defenses adequately disclosed that they intended to raise the manager exemption in response to Plaintiff's overtime claims. Having done so, the Court further finds that Defendants' Answer was sufficient to put Plaintiff on notice that Defendants intended to raise the sole-charge exception. The sole-charge exception is nothing more than an exception from the percentage limitations on nonexempt work normally required to qualify for the manager exemption. Notwithstanding this, Plaintiff seeks to impose a rule requiring Defendants to not only list all affirmative defenses in their answer, but to also detail the factors that are used by the Court in determining whether an affirmative defense applies.

This argument runs contrary to Rule 8(b)'s requirement that the party state its defenses in "short and plain terms." *See Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir.1988) (holding that liberal pleading rules apply to the pleading of affirmative defenses). Therefore, the Court finds that Defendants' Answer put Plaintiff on notice of their intention to raise the sole-charge exception to the manager exemption and, considering that Plaintiff questioned both Cohen and Guerrero extensively on Plaintiff's duties and schedule, no prejudice will result from allowing Defendants to raise this defense at trial. *See Hassan*, 842 F.2d at 263 (citing *Bull's Corner Rest. v. Dir. of the Fed. Emergency Mgmt. Agency*, 759 F.2d 500, 502 (5th Cir.1985) (stating that if the defendant's failure to comply with Rule 8(c) does not prejudice the plaintiff, the trial court does not commit error by allowing the defendant to present evidence on the issue)). Accordingly, the Court concludes that Defendants sufficiently disclosed the manager exemption defense and the sole-charge exception to the manager exemption in their Answer.

As to Plaintiff's second argument, Defendants agree that they are prohibited from raising the sole-charge exception for Plaintiff's claims arising after August 23, 2004. On that day, the Department of Labor modified its regulations to eliminate the sole-charge exception to the manager exemption. Accordingly, in both Plaintiff's Motion for Partial Summary Judgment and Defendant's Motion for Summary Judgment, the Court will address separately Plaintiff's claims from January 2002 to August 22, 2004 and those from August 23, 2004 to January 2005, in accordance with the regulations applicable to each time period.

Lastly, Plaintiff claims that Defendants' admissions that Plaintiff managed the hotel strictly during the 12:00 a.m. to 8:00 a.m. shift and Cohen's testimony that he owns the Parisian and works there each day demonstrate that there is no material issue of fact that Plaintiff was not in "sole-charge" of the Parisian as required under 29 C.F.R. § 541.1. After carefully reviewing the parties' arguments, the Court finds, although for reasons different than those proposed by Plaintiff, that he is entitled to summary judgment on Defendants' sole-charge defense.

Prior to August 23, 2004, an employee was exempt as an executive from the overtime provisions of the FLSA if the employer demonstrated the following: (a) that the employee's primary duty consisted of management of the enterprise; (b) that the employee customarily and regularly directed the work of two or more other employees; (c) that the employee "ha[d] the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion ... of other employees w[ould] be given particular weight"; (d) that the employee customarily and regularly exercised discretionary powers; and (e) that the employee did not devote 40 percent or more of his hours to activities not directly and closely related to the activities in paragraphs (a)-(d). 29 C.F.R. § 541.1(a)-(e). This is often referred to as the "long test." *Atlanta Prof'l Firefighters Union, Local 134 v. Atlanta*, 920 F.2d 800, 804 (1991).

However, pursuant to paragraph (e) of 29 C.F.R. § 541.1, if an employee was found to be in "sole-charge" of the enterprise, the employer was not required to demonstrate that the employee was not devoting 40 percent or more of his hours to activities not directly and closely related to the activities described in paragraphs (a)-(d). § 541.1(c). Paragraph (f) further provided that:

an employee who is compensated on a salary basis at a rate of not less than $250 per week ... exclusive of board, lodging, or other facilities, and whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all the requirements of this section.

This is often referred to as the "short test." *Sturm v. TOC Retail, Inc.*, 864 F.Supp. 1346, 1350 (M.D.Ga.1994).

Thus, in practice if an employer paid his employee a salary of $250 or more per week and seeks to claim the executive exemption for work performed prior to August 23, 2004, the employer's claim is analyzed under the short test. § 541.1(f). In such a case, analysis of the sole charge exception is unnecessary because the plain terms of § 541.1(f) do not require that the employee devote less than 40 percent of his hours to activities not directly and closely related to the performance of work described in paragraphs (a)-(d).

 Here, it is undisputed that Plaintiff's salary exceeded $250 per week. Therefore, the Court's analysis of whether Plaintiff comes within the executive exemption is guided by the short test. Nonetheless, Defendants claim that the Court still needs to analyze whether Plaintiff was in "sole-charge" of the Parisian because such a finding would exempt Defendants from having to prove § 541.1(f)'s primary duty requirement and the requirement that Plaintiff have directed two or more employees. Defendants fail to provide any case law for this assertion. More importantly, Defendants' claim contradicts the plain language of § 541.1 and § 541.113(a)'s statement that the sole-charge exception provides "an exception from the *percentage limitations on nonexempt work.*" (emphasis added). Nowhere do the regulations state that the sole-charge exception provides an exception to § 541.1(f)'s primary duty requirement and the requirement that Plaintiff have directed two or more employees. Therefore, the Court finds that the sole-charge exception is inapplicable to a determination of whether Plaintiff falls within the executive exemption under § 541.1(f). Accordingly, Plaintiff's Motion for Partial Summary Judgment is granted.

### Defendants' Motion for Summary Judgment

Defendants move for summary judgment on Plaintiff's overtime claim because they claim Plaintiff is exempt under the executive exemption, 29 U.S.C. § 213(a)(1) and its corresponding regulation 29 C.F.R. § 541.100. Specifically, Defendants assert that for Plaintiff's claim up to August 23, 2004, he is exempt from the FLSA's overtime provisions pursuant to the sole-charge exception found in 29 C.F.R. § 541.113 (2004). Additionally, Defendants claim that Plaintiff comes within the executive exemption found in § 541.1(f) of the 2004 regulations for Plaintiff's claim arising before August 23, 2004, and under § 541.100 of the 2005 regulations for Plaintiff's claim arising on or after August 23, 2004. As an initial matter, the Court rejects Defendants' claim that the sole-charge exception applies for the same reasons the Court granted Plaintiff's Motion for Partial Summary Judgment.

As to Defendants' claim that Plaintiff falls within the executive exemption, § 541.1(f) (2004) and § 541.100 (2005), the Court first notes that because the Department of Labor's regulations with respect to the executive exemption changed on August 23, 2004, the Court's analysis of whether Plaintiff falls within the exemp-

tion is, for the purposes of addressing Plaintiff's employment before and after August 23, 2004, slightly different. Under § 541.1(f) of the 2004 regulations, Defendants are required to prove, during the time period from January 2002 up to August 23, 2004 that: (1) they compensated Plaintiff at least $250 dollars per week; (2) Plaintiff's primary duty consisted of the management of the Parisian Hotel; and (3) he customarily and regularly directed the work of two or more other employees. On the other hand, under § 541.100 of the 2005 regulations, Defendants are required to prove, from August 23, 2004 up until Plaintiff quit in January 2005, that: (1) they compensated Plaintiff at least $455 per week; (2) Plaintiff's primary duty consisted of the management of the Parisian Hotel; (3) he customarily and regularly directed the work of two or more employees; and (4) he "had the authority to hire or fire other employees or [that his] suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees [were] given particular weight." § 541.100(4). Because it is undisputed that Plaintiff's salary exceeded $455 throughout his employment, the only practical difference in the Court's analysis is the additional factor regarding the hiring and firing of employees. Thus, although the applicable factors in determining whether Plaintiff corner within the executive exemption for both time periods are the same except for paragraph (4) under § 541.100, the Court will analyze Plaintiff's claim with respect to each time frame.

*1. Plaintiff's Employment From January 2002 to August 23, 2004*

 Exemptions under the FLSA are construed narrowly and the burden of producing plain and unmistakable evidence that an employee is exempt is on the employer. *Evans v. McClain of Ga.,* Inc., 131 F.3d 957, 965 (11th Cir.1997) (citing *Jeffery v. Sarasota White Sox,* Inc., 64 F.3d 590, 594 (11th Cir.1995)); *Hodgson v. Klages Coal & Ice Co.,* 435 F.2d 377, 382 (6th Cir.1970). Whether an employee qualifies for the executive exemption under § 213(a)(1) is primarily a question of fact, "to be determined on a case-to-case basis from all the circumstances." *Posely v. Eckerd Corp.,* 2006 WL 1366737, at *15 (S.D.Fla. May 16, 2006) (quoting *Dye v. Family Mkt., Inc.,* 1982 WL 19205, at *4 (10th Cir. Feb.22, 1982) (citing *Walling v. Gen. Indus. Co.,* 330 U.S. 545, 67 S.Ct. 883, 91 L.Ed. 1088 (1947))); *See also Wagner v. Murphy Oil USA, Inc.,* 2005 WL 1395047, at *1 (11th Cir. April 27, 2005) (holding that whether employee was a manager within the FLSA's executive exemption was a question for the jury); *Brennan v. S. Prod., Inc.,* 513 F.2d 740 (6th Cir.1975); *Pugh v. Lindsay,* 206 F.2d 43 (4th Cir. 1953). However, after the factual issues regarding the employees activities are resolved, the ultimate issue of whether the employee's activities qualify for an exemption is a question of law. *Icicle Seafoods, Inc. v. Worthington,* 475 U.S. 709, 714, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986); *Zheng v. Liberty Apparel Co. Inc.,* 355 F.3d 61, 76 (2nd Cir.2003); *Brock v. Mr. W Fireworks, Inc.,* 814 F.2d 1042, 1044 (5th Cir. 1987).

*Primary Duty Requirement*

Section 541.103 under the pre-August 23, 2004 regulations defines primary duty as follows:

> A determination of whether an employee has management as his primary duty must be based on all the facts in a particular case. The amount of time spent in the performance of the managerial duties is a useful guide in determining whether management is the primary duty of an employee. In the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the em-

ployee's time. Thus, an employee who spends over 50 percent of his time in management would have management as his primary duty. Time alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion. Some of these pertinent factors are the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor

. . . .

Section 541.102(b) defines those activities constituting management as:

[i]nterviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing safety of the men and the property.

*Time Spent on Management Duties*

■ It appears clear from the undisputed facts on the record that Plaintiff spent the majority of his time performing ex-

empt tasks as defined by § 541.102(b). Almost all of Plaintiff's activities involved the review and appraisal of the work done by other employees during the daytime shift at the hotel. Plaintiff reviewed the hotel log to verify that payment had been properly collected. Plaintiff inspected the credit card log and verified whether the vouchers matched the total charged before sending the final batch to the bank. Plaintiff also verified that payment for parking had been properly collected by the day shift. If Plaintiff found any errors, he corrected them and then later instructed the employee as to the proper procedure. He also reported to Cohen instances of employee mistakes and made suggestions to him of corrective actions. Additionally, Plaintiff trained employees on the hotel's computer system. All of these duties, which occupied the majority of Plaintiff's time, are exempt.

As to nonexempt tasks, Plaintiff's time spent on them was minimal. Although Plaintiff was required to rent rooms, in practice he performed this function rarely because his shift covered the middle of the night. Plaintiff ordered the morning pastries and occasionally made coffee, although these tasks took no more than a few minutes of his time. Finally, considering the time of day Plaintiff worked and the fact that he often worked alone, any time not attributed to the tasks already mentioned was spent ensuring the safety of the hotel.

*Relative Importance of Managerial Duties*

This factor weighs heavily in favor of finding management as Plaintiff's primary duty. It is undisputed that Plaintiff's auditing duties were essential to the viability of the hotel. Verifying the collection of payment, correcting employee errors, ensuring the safety of the property and training employees are all integral parts of any business. In comparison, ordering

pastries and preparing coffee, while surely appreciated by guests, pales in comparison of importance to Plaintiff's exempt duties. And, while renting rooms is unquestionably integral to the success of a hotel, this duty clearly was of less importance on Plaintiff's shift. Accordingly, the relative importance of Plaintiff's managerial duties compared to his nonexempt duties supports the conclusion that Plaintiff's primary duty was management.

*Frequency of Exercise of Discretionary Powers and Freedom from Supervision*

This factor also supports the conclusion that Plaintiff's primary duty was management. Other than Cohen's nightly call, Plaintiff was free from supervision during his entire shift. Plaintiff performed his accounting and auditing duties without oversight other than to report his findings to Gurerro during his first year and to Cohen thereafter. However, the fact that Guerrero and Cohen may have exercised some supervision over Plaintiff's nightly audit is not a material fact under the relevant case law. In *Dymond v. U.S. Postal Service,* 670 F.2d 93, 96 (8th Cir.1982), the court addressed the issue of whether supervision over the discretionary decisions made by postal inspectors prevented the employer from claiming that the inspectors were exempt from the overtime provisions of the FLSA. In *Dymond,* the inspectors were responsible for, among other things, "developing and implementing new programs, training new personnel, maintaining security, and financial auditing of postal procedures." *Id.* at 94 n. 2. The Court found these types of activities regularly involved the exercise of discretion. *Id.* For example, the inspectors exercised discretion in determining whether situations required immediate action, whether to report a violation up the chain of command or address it themselves, and how to implement training procedures. *Id.* at 94–95. As to the fact that the inspectors' discretionary judgments were subject to further

approval, the court held that "even to the extent that a decision may be reversed by higher level management, it does not follow that the work did not require the exercise of discretion and independent judgment ...." *Id; See also Donovan v. Burger King Corp.,* 672 F.2d 221, 226 (1st Cir.1982) (finding assistant managers' primary duty was management despite the fact that they were supervised by manager who limited their ability to exercise discretion where the court found that the assistant managers were in charge during their shifts).

Here, Plaintiff ran the hotel during his shift and had to address problems as they arose. When making his decisions, he had no supervision and only reported problems to Guerrero or Cohen *after* taking action. Upon finding employee errors, Plaintiff determined whether to address the problem strictly with the individual employee himself, or whether the error required notification of Guerrero or Cohen. Furthermore, because of his expertise with the computer system, Plaintiff decided the methods for training employees and how long to train them. He also determined how to implement follow up training if they made errors on the system. Upon receiving guests complaints and maintenance requests, Plaintiff determined which problems required the maintenance man's immediate action, which problems could not be addressed until normal business hours, and which problems required discussion with Cohen. All in all, Plaintiff's discretionary decisions made in performing auditing duties, training employees and addressing maintenance issues were essential to the operation of the hotel in Cohen's absence. Accordingly, the Court finds these undisputed facts weigh in favor of concluding that Plaintiff's primary duty was management.

*Relationship Between Salary and Wages Paid Other Employees*

Lastly, the relationship between Plaintiff's salary and the wages paid to front desk clerks supports the conclusion that Plaintiff's primary duty was management. Plaintiff's salary fluctuated between $459 and $550 per week. In comparison, at a rate of $7.00 to $10.00 per hour, the other front desk clerks received a weekly paycheck ranging from $280.00 to $400 per week. Consequently, Plaintiff's substantially higher salary weighs in favor of finding that Plaintiff's primary duty was management.

Having carefully reviewed the enumerated factors under § 541.103, the Court finds that, even viewing the facts in the light most favorable to Plaintiff, that Plaintiff's primary duty was management. Plaintiff spent the majority of his time performing exempt duties, the exempt duties were much more important to the hotel when compared to his non-exempt duties, Plaintiff had little or no supervision and often exercised discretionary decisions, and Plaintiff's wages were significantly higher than that of the other front desk clerks. Therefore, the Court finds that Defendants are entitled to summary judgment on its claim that Plaintiff's primary duty was management.

*Supervising Two or More Employees*

Even though the undisputed facts demonstrate that Plaintiff's primary duty was management, Defendants' must still prove that no material facts are in dispute that Plaintiff customarily and regularly directed the work of two or more employees. The Department of Labor regulations define "two or more employees" as two full time employees or their equivalent. § 541.105(a). The regulations also interpret "customarily and regularly" to mean "a frequency which must be greater than occasional but which, of course, may be less than constant." § 541.107.

Plaintiff claims that Defendants have failed to produce any evidence demonstrating that Plaintiff supervised two or more employees who worked an equivalent of eighty hours per week. Plaintiff's claim is without merit. Not only have Defendants produced evidence that Plaintiff supervised two or more employees, but there are no material issues of fact in dispute on this point. It is undisputed that every night Plaintiff reviewed the work of the front desk clerk who worked from 8 a.m. to 4 p.m. and the one who worked from 4 p.m. to 12:00 a.m. If Plaintiff found errors in their work, he would correct them, inform the clerk of the error and direct the clerk as to the proper procedure to be followed. Nonetheless, Plaintiff claims these facts are insufficient to demonstrate that he directed the work of two or more employees. In *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104 (9th Cir.2001), the court addressed a similar issue in determining whether "managers" of an RV park were entitled to the executive exemption. On the issue of supervision, the plaintiffs argued that, because they only reviewed the other employees' performance and worked at non-overlapping times, the "managers" did not customarily and regularly direct the work of two or more employees. *Id.* at 1117. In affirming the district order granting summary judgment for the employer that the managers were exempt, the Court found that actual physical presence with the employees was not an essential requirement if the "managers" supervised the employees' work in other ways. *Id.* Here, although Plaintiff was not normally present during the day clerks' shifts, he undisputedly supervised them in other ways. Plaintiff reviewed and corrected the work of two full time employees and spent additional time training them. *See Sturm v. TOC Retail, Inc.*, 864 F.Supp. 1346, 1354 (M.D.Ga.1994) (finding that convenience store manager need not be physi-

cally present if he regularly and customarily reviewed the work and performance of subordinate employees in other ways). Although Plaintiff points to the fact that he was not authorized to write up or fire employees, this does not negate that Plaintiff supervised their work. Plaintiff regularly reported to Cohen about the mistakes made by the day clerks and recommended that Cohen address these issues.

In addition to reviewing the work done by the day clerks, Plaintiff also regularly and customarily directed the work of the hotel's maintenance man and maids. Plaintiff directed the maintenance man to fix problems reported by guests and would provide the maid with a list of rooms to clean each morning. These additional facts, in conjunction with Plaintiff's supervision of the day clerks, compel the conclusion that Plaintiff customarily and regularly directed the work of two or more employees. Therefore, the Court finds that, for the time period from January 2002 up to August 23, 2004, Defendants have demonstrated that no material facts are in dispute that Defendants are entitled to claim the executive exemption for Plaintiff under § 13(a)(1).

*2. Plaintiff's Employment from August 23, 2004 to January 2005*

Because Plaintiff's duties remained the same throughout his employment, the Court's analysis of Plaintiff's claims in this time period are the same, except that the Court must address whether after August 23, 2004 Plaintiff had the "authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other changes of status of other employees [were] given particular weight." 29 C.F.R. § 541.100(4). To determine whether an employee's suggestions and recommendations are given "particular weight," the regulations provide as factors:

whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon .... An employee's suggestions and recommendations may still be deemed to have 'particular weight' ... even if the employee does not have authority to make the ultimate decision as to the employee's change in status.

29 C.F.R. § 541.105.

Here, there are facts in dispute as to whether Plaintiff had the authority to hire or fire employees. Plaintiff testified that he did not have the authority, whereas Cohen testified that Plaintiff had the authority and that Plaintiff also exercised that authority. Therefore, the Court must look to see if there are material facts in dispute as to whether Plaintiff gave suggestions and recommendations as to the hiring, firing, advancement, promotion or any other changes of status of other employees that Cohen gave particular weight to. During his deposition, Plaintiff testified that "normally ... when a new guy comes to work ... after a couple of days [Cohen] asks me how I feel." (Rozenblum Dep. at 65.) Plaintiff claims that he never responded in detail except to tell Cohen "if you don't like him, fire him." *Id.* However, Plaintiff also testified that he spoke to Cohen several times about employees who failed to pay attention to their work and made mistakes. *Id.* at 66. Plaintiff recommended that Cohen "find out a way to fix this." *Id.*

It appears from Plaintiff's own testimony that he made recommendations and suggestions on the performance of employees. And, according to Plaintiff's testimony, Plaintiff reported to Cohen on the performance of employees quite frequently.

(Rozenblum Dep. at 66.) Furthermore, according to the plain terms of § 541.105, the factual dispute over whether Plaintiff had the ultimate authority to fire an employee does not negate the undisputed fact that Cohen placed particular weight on Plaintiff's opinion and recommendations regarding employee performance. (Cohen Dep. at 36.) Therefore, the Court concludes that, even viewing the facts in the light most favorable to Plaintiff, Plaintiff frequently made suggestions and recommendations as to the hiring and firing of employees which Cohen gave particular weight to. Accordingly, the Court finds that, for the time period from August 23, 2004 to January 2005, Defendants have demonstrated that no material facts are in dispute and that they are entitled to claim the executive exemption for Plaintiff under § 13(a)(1). It is hereby

ORDERED AND ADJUDGED that Plaintiff's Motion for Partial Summary Judgment is GRANTED. It is further

ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment is GRANTED.